987 A.2d 555

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. RICHARD CHIPPERO, DEFENDANT–RESPONDENT.

Argued September 29, 2009—Decided December 29, 2009.

 

 

*Nancy A. Hulett,* Assistant Prosecutor, argued the cause for appellant (*Bruce J. Kaplan,* Middlesex County Prosecutor, attorney).

*Alison S. Perrone* argued the cause for respondent (*Yvonne Smith Segars,* Public Defender, attorney).

*Steven A. Yomtov,* Deputy Attorney General, argued the cause for *amicus curiae,* Attorney General of New Jersey (*Anne Milgram,* Attorney General, attorney).

Justice LaVECCHIA delivered the opinion of the Court.

On July 23, 1991, Ermina Rose Tocci was found stabbed to death in her North Brunswick mobile home at 51 Poe Road. At the time of the homicide, defendant Richard Chippero resided next door at 49 Poe Road. A rapidly unfolding investigation aided by a citizen report led to defendant's arrest within a few days of the murder. Since then, he twice was tried and convicted for Tocci's murder. We reversed the first conviction because we concluded that defendant's confession had been impermissibly obtained through the State's seizure of him without probable cause to arrest and therefore it should not have been used against him at trial. *State v. Chippero,* 164 *N.J.* 342, 362, 753 *A.*2d 701 (2000) (*Chippero I* ) (holding that confession, obtained after almost nine unbroken hours of custodial interrogation, was not sufficiently attenuated from defendant's illegal arrest). The case was remanded for retrial with a direction that the confession be excluded. *Ibid.*

In the appeal that followed defendant's second conviction, the Appellate Division questioned, as a preliminary matter, the validity of the search warrant that the police had obtained to search the 49 Poe Road residence before defendant was taken into custody.[1] Concluding that a finding of probable cause to issue a search warrant could not be supported in light of *Chippero I*'s underlying factual premise that there was no probable cause for defendant's arrest, the panel reversed defendant's second conviction.

We granted the State's petition for certification, 197 *N.J.* 258, 962 *A.*2d 529 (2008), and now reverse. Although the evidence that justifies both an arrest and the issuance of a search warrant must support a finding of probable cause, the two probable cause determinations are not identical. A finding of probable cause as to one does not mean that probable cause as to the other must follow, nor does the lack of one compel a finding of the lack of proof for the other. Thus, evidence that is insufficient to justify the arrest of a person nonetheless may be sufficient to justify the search of a home in connection with the investigation of a crime. Accordingly, nothing in our *Chippero I* holding should be perceived as having compelled the suppression of the evidence seized from defendant's home. Moreover, to the extent that defendant's appeal questions, at this stage of the proceedings, the warrant-issuing judge's determination that sufficient facts had been presented to support his finding of probable cause to search 49 Poe Road, we reject the challenge. A search warrant is presumed to be valid and an appellate court's role is not to determine anew whether there was probable cause for issuance of the warrant, but rather, whether there is evidence to support the finding made by

---

[1] The search warrant was executed by a team of investigators while other officers went looking for defendant at another location. Defendant's brother told the police that he believed defendant had gone fishing. Ultimately, defendant was found at nearby Farrington Lake. Once located, he was patted down, handcuffed, and brought to the prosecutor's office for questioning. As noted in *Chippero I, supra,* in response to defendant's claim that his confession should have been suppressed, the State's legal argument acknowledged that defendant was taken into custody without probable cause. 164 *N.J.* at 344, 753 *A.*2d 701.

the warrant-issuing judge. Here there was and, therefore, we reverse the Appellate Division's contrary determination.

## I.

Two days after the discovery of the Tocci homicide, the police investigation into the case was aided by information provided by a disinterested citizen and former neighbor of Tocci, Kevin McMenemy. McMenemy contacted the North Brunswick police on July 25th to inform them that on the day that Tocci was murdered, he was waiting nearby to pick up his stepdaughter at his estranged wife's home at 45 Poe Road. He arrived at about 2:30 p.m. and, after waiting in his car approximately nine minutes, he observed a Caucasian man run from the vicinity of the front of the victim's home to the entrance of the mobile home next door. The mobile home that the man entered was defendant's residence at 49 Poe Road. McMenemy described the man as stocky, about 5′8″ tall, with sandy or dirty blond hair that was not "terribly long in the back, but it did cover his ears," and a mustache. He noticed that the man seemed to be "sweaty"; his clothing appeared to be "clammy" and sticking to him. He was wearing a gray short-sleeved tee shirt and darker colored shorts. In response to questioning, McMenemy denied seeing any blood stains on either the man or his clothing. He also told the police that when he returned his daughter to her home after lunch he saw the same man wearing different clothing and riding a bicycle.

The same day that the police obtained the information from McMenemy, they sought and obtained a search warrant for defendant's home from the Honorable Robert P. Figarotta, J.S.C. Although the police did not know who McMenemy had seen going into 49 Poe Road from the vicinity of Tocci's home, they knew that the twenty-three-year-old defendant lived there with his eleven-year-old brother, his mother, his stepfather, and his grandmother. Detective Charles Clark testified before Judge Figarotta about the information gleaned from McMenemy, adding background information obtained about defendant. The judge issued the

search warrant, authorizing the police to search for a "single edged knife approximately one (1) inch wide, bloody clothing, gray short sleeved shirt, [and] dark colored shorts." The warrant described the premises to be searched:

> 49 Poe Road, Deerbrook Village, North Brunswick, blue aluminum sided 1st floor, open front porch with extended entranceway and shed in rear. All common areas and bedroom of Richard Chippero.

When officers arrived to execute the search warrant, defendant's grandmother allowed them entry into the home. Although the officers expected to find defendant there, he was not present. Based on information provided by defendant's brother, some investigators went to find defendant while others remained to execute the search. The residence was searched and several items were seized.[2]

Meanwhile defendant was located at Farrington Lake. After an investigator identified himself as a police officer, defendant acknowledged that he was Richard Chippero. The officers patted him down, handcuffed him, and transported him to the prosecutor's office where he waived his *Miranda*[3] rights and signed a *Miranda* waiver card. After approximately nine hours of interrogation, he confessed to raping and murdering Tocci.

Defendant was indicted for second-degree possession of a weapon for an unlawful purpose, *N.J.S.A.* 2C:39–4(d) (count one); second-degree burglary, *N.J.S.A.* 2C:5–1 and *N.J.S.A.* 2C:18–2 (count two); first-degree aggravated sexual assault, *N.J.S.A.* 2C:14–2(a) (count three); purposeful or knowing murder, *N.J.S.A.* 2C:11–3(a)(1),(2) (count four); felony murder, *N.J.S.A.* 2C:11–3(a)(3) (count five); and third-degree hindering apprehension or prosecution, *N.J.S.A.* 2C:29–3(b)(1) (count six). On February 24, 1994, the Honorable Barnett E. Hoffman, J.S.C., denied defendant's motion to suppress the items obtained from the search of

---

[2] Later that same day, officers applied to Judge Figarotta for a second warrant to search garbage cans located at the rear of the property. Judge Figarotta also granted that application.

[3] *Miranda v. Arizona,* 384 *U.S.* 436, 86 *S.Ct.* 1602, 16 *L.Ed.*2d 694 (1966).

his home.[4] On May 8, 1995, the Honorable John S. Kuhlthau, J.S.C., denied defendant's motion to suppress admission of his confession.

A jury convicted defendant on all counts except the burglary charge. Although it found defendant guilty of capital murder, the jury did not vote to impose the death penalty. The court sentenced defendant to two concurrent life terms with a fifty-five-year parole disqualifier. On appeal, defendant challenged the admissibility of his confession but did not raise the validity of the search warrant. The Appellate Division upheld the conviction and sentence. The panel accepted, as the factual predicate to the parties' arguments, that defendant had been subjected to an illegal arrest, but found that the passage of time between the arrest and confession broke the causal connection between the two and purged the confession of any taint from the illegal arrest. However, we reversed and remanded for a new trial because the "mere passage of time ordinarily does not purge the taint of an illegal arrest." *Chippero I, supra,* 164 *N.J.* at 362, 753 *A.*2d 701. We found that nothing that occurred during defendant's lengthy interrogation freed his confession from the taint of his illegal arrest and that therefore suppression was necessary. *Ibid.*

Prior to the start of defendant's second trial, he moved again to suppress the evidence obtained from the search of his mobile home. Defendant re-raised the arguments advanced before Judge Hoffman prior to his first trial: first, that the search warrant signed by Judge Figarotta was not supported by sufficient evidence, adding now that his position had support from *Chippero I*'s determination that the State lacked probable cause to arrest him at the time of execution of the search warrant; and second, that the warrant application was based on information known by the

---

[4] Although defendant's application was filed late under *Rule* 3:5–7(a), Judge Hoffman addressed its merits and rejected both the contention that the State failed to present sufficient evidence to constitute probable cause for the search warrant and, in the alternative, that the State misled Judge Figarotta when applying for the warrant.

State to be false and misleading. Defendant also raised a third argument, namely that the warrant did not authorize the seizure of a pair of sneakers that were taken from defendant's bedroom. Although the State argued that defendant could not resurrect his prior challenge to the search warrant, the Honorable Phillip L. Paley, J.S.C., addressed defendant's challenge on its merits.[5] The motion was denied and, at the retrial, the evidence seized from defendant's home was admitted. A jury again convicted defendant of purposeful or knowing murder, *N.J.S.A.* 2C:11–3(a)(1),(2), as well as second-degree possession of a weapon for an unlawful purpose, *N.J.S.A.* 2C:39–4(d). The court sentenced defendant to a life term with a thirty-year parole disqualifier.

In the appeal from his second conviction, defendant raised a number of arguments, including that the court erred in denying his pre-second-trial motion to suppress. Defendant's argument again pivoted off the premise in *Chippero I* that the State lacked probable cause to arrest him on July 25, 1991, which he contended eviscerated the legitimacy of the finding of probable cause to search his home that same day. Determining that that issue required decision before all others, the Appellate Division ordered supplemental briefing and argument. In order to evaluate fully the State's argument that *Chippero I* did not affect the validity of the search warrant, the panel thereafter remanded to the Law Division to determine whether the lack of probable cause to arrest affected the validity of Judge Figarotta's determination of probable cause to issue the search warrant.

The Honorable Deborah J. Venezia, J.S.C., handled the remand proceedings. In her decision, she noted that although the standard employed to determine probable cause to arrest and probable cause to search is the same, probable cause in each protects

---

[5] The State argued that the law of the case controlled because defendant did not include the denial of his suppression motion among his issues on appeal from his first trial. The motion court appears not to have rejected the State's "law of the case" argument, but rather to have deemed it more prudent to confront the merits and dispose of defendant's motion in complete fashion prior to trial, including ruling on the use of the physical evidence of the sneakers.

different interests and can lead to different results. Thus, she reasoned that, even if the State's previous statements during argument in response to the issues raised in *Chippero I* amounted to a binding concession that the police lacked probable cause for defendant's arrest, the concession should have no effect on the validity of the warrant-issuing court's determination of probable cause to search. As Judge Venezia explained, the determination of probable cause made by Judge Figarotta based on the testimony presented to him during the in camera proceedings must be evaluated by any reviewing court based on what was before the issuing court at the time. Thus, because Judge Figarotta's determination of probable cause must be reviewed solely based on what was before him, Judge Venezia concluded that the validity of his determination remained unaffected by what later transpired in *Chippero I*. In closing, she added that the remand did not request her to review the validity of the determination of probable cause to search made by Judge Figarotta based on what was before him, and she further observed that such a review already had occurred twice by Judges Hoffman and Paley.

Before the Appellate Division, defendant reasserted his arguments. In reviewing defendant's second conviction, the panel held that a finding of probable cause to issue a search warrant for 49 Poe Road simply could not be supported in light of the statement in *Chippero I* that defendant's arrest was without probable cause. *See Chippero I, supra,* 164 *N.J.* at 344–45, 753 *A*.2d 701 (noting at outset that State's argument concerning defendant's confession "acknowledged" that defendant's arrest was without probable cause). And, as the panel emphasized, nothing in our earlier *Chippero I* "opinion or otherwise" suggests "that the probable cause to arrest, which was lacking, can be distinguished from the probable cause to search."

## II.

### A.

The Fourth Amendment of the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution

protect against unreasonable searches and seizures by requiring a showing of probable cause to issue a warrant. *U.S. Const.* amend. IV; *N.J. Const.* art. I, ¶ 7. Once issued, "[a] search warrant is presumed to be valid, and defendant bears the burden of demonstrating that the warrant was issued without probable cause or that the search was otherwise unreasonable." *State v. Evers,* 175 *N.J.* 355, 381, 815 *A.2d* 432 (2003) (citations omitted). Our decisions reflect the importance that is attached to a validly issued warrant before a search or seizure of persons or property may take place.

> The requirement for [a] search warrant is not a mere formality but is a great constitutional principle embraced by free men and expressed in substantially identical language in both our federal and state constitutions. . . .
>
> The [Fourth] Amendment sets a firm standard with respect to the essentials of a search warrant. Under its terms the search warrant is not to issue except upon probable cause, supported by oath or affirmation. The crucial determination is to be made not by the police officer but by a neutral issuing judge.
>
> [*State v. Novembrino,* 105 *N.J.* 95, 107, 519 *A.2d* 820 (1987) (alterations in original) (internal quotation marks omitted) (quoting *State v. Macri,* 39 *N.J.* 250, 255–57, 260–61, 188 *A.2d* 389 (1963)).]

In respect of that crucial probable cause determination, it is well settled that the issuing magistrate is required to make the determination based on only that information which is "contained within the four corners of the supporting affidavit" or sworn testimony provided by law enforcement personnel. *Schneider v. Simonini,* 163 *N.J.* 336, 363, 749 *A.2d* 336 (2000) (citations omitted); *see also Evers, supra,* 175 *N.J.* at 380–81, 815 *A.2d* 432 (citations omitted) (stating same). That said, the probable cause standard itself is not easily distilled.

 "Probable cause eludes precise definition." *State v. Sullivan,* 169 *N.J.* 204, 210, 777 *A.2d* 60 (2001) (citations and internal quotation marks omitted). It has been observed that the drafters of the Fourth Amendment made no "attempt to describe with precision what was meant by its words 'probable cause.' " *Zurcher v. Stanford Daily,* 436 *U.S.* 547, 578 & n. 2, 98 *S.Ct.* 1970, 1988 & n. 2, 56 *L.Ed.*2d 525, 549 & n. 2 (1978) (Stevens, J., dissenting) (internal quotation marks omitted) (quoting *Berger v. New York,*

388 *U.S.* 41, 75, 87 *S.Ct.* 1873, 1891, 18 *L.Ed.*2d 1040, 1061–62 (1967) (Black, J., dissenting) (discussing drafters' preference for words that are deliberately "imprecise and flexible")). Probable cause has been aptly described as "a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *United States v. Jones,* 994 *F.*2d 1051, 1056 (3d Cir.1993) (internal quotation marks omitted) (quoting *Illinois v. Gates,* 462 *U.S.* 213, 232, 103 *S.Ct.* 2317, 2329, 76 *L.Ed.*2d 527, 544 (1983)). The standard "deals with probabilities and depends on the totality of circumstances." *Maryland v. Pringle,* 540 *U.S.* 366, 371, 124 *S.Ct.* 795, 800, 157 *L.Ed.*2d 769, 775 (2003) (citations omitted). Our decisions similarly require issuing courts to consider the totality of the circumstances when assessing the reasonable probabilities that flow from the evidence submitted in support of a warrant application. *See Schneider, supra,* 163 *N.J.* at 361, 749 *A.*2d 336 (citing *Gates, supra,* 462 *U.S.* at 230–31, 238, 103 *S.Ct.* at 2328, 2332, 76 *L.Ed.*2d at 543–44; *Novembrino, supra,* 105 *N.J.* at 122, 519 *A.*2d 820); *see also State v. Keyes,* 184 *N.J.* 541, 554, 878 *A.*2d 772 (2005) (citations omitted) (reiterating applicability of totality of circumstances test).

Whether in the arrest context or in a search context, it is the same standard of proof that controls: probable cause. *See State v. Moore,* 181 *N.J.* 40, 45, 853 *A.*2d 903 (2004) (citing *State v. Smith,* 155 *N.J.* 83, 92, 713 *A.*2d 1033 (1998)); *see also United States v. Humphries,* 372 *F.*3d 653, 659 (4th Cir.2004) ("[I]n both [arrest and search] cases, the quantum of facts required for the officer to search or to seize is 'probable cause,' and the quantum of evidence needed to constitute probable cause for a search or a seizure is the same." (citations omitted)). However, as scholars and a variety of courts have recognized, although the conclusions that justify an arrest and that justify the issuance of a search warrant must be supported by evidence of the same degree—probable cause—the conclusions themselves are not identical. *See generally* 2 Wayne R. LaFave, *Search & Seizure* § 3.1(b) (4th ed.

2004). Probable cause for the issuance of a search warrant requires "a fair probability that contraband or evidence of a crime will be found in a particular place." *Jones, supra,* 994 *F.*2d at 1056 (internal quotation marks omitted) (quoting *Gates, supra,* 462 *U.S.* at 238, 103 *S.Ct.* at 2332, 76 *L.Ed.*2d at 548); *see Evers, supra,* 175 *N.J.* at 381, 815 *A.*2d 432 (requiring issuing judge to find "that a crime has been or is being committed at a specific location or that evidence of a crime is at the place to be searched" (citations omitted)); *see also Moore, supra,* 181 *N.J.* at 45, 853 *A.*2d 903 (quoting *State v. Nishina,* 175 *N.J.* 502, 515, 816 *A.*2d 153 (2003) (citations omitted)) (describing standard as requiring well-grounded suspicion). For probable cause to arrest, there must be probable cause to believe that a crime has been committed and "that the person sought to be arrested committed the offense." *Schneider, supra,* 163 *N.J.* at 363, 749 *A.*2d 336.

As Professor LaFave explains, the shared standard of probable cause common to issuance of an arrest warrant and a search warrant does not necessarily result in inquiries that are "in all respects" the same. LaFave, *supra,* § 3.1.(b).

> The fact that there are grounds amounting to probable cause to make an arrest does not mean that a search warrant could lawfully issue upon that same information. Nor can it be said that probable cause for a search warrant would necessarily justify an arrest. Each requires a showing of probabilities as to somewhat different facts and circumstances—a point which is seldom made explicit in the appellate cases. As one commentator has helpfully pointed out:
>
>> Basic to search warrant protections is the requirement of *probable cause.* Its function is to guarantee a substantial probability that the invasions involved in the search will be justified by discovery of offending items. Two conclusions necessary to the issuance of the warrant must be supported by substantial evidence: that the items sought are in fact seizable by virtue of being connected with criminal activity, and that the items will be found in the place to be searched. By comparison, the right of arrest arises only when a crime is committed or attempted in the presence of the arresting officer or when the officer has "reasonable grounds to believe"—sometimes stated "probable cause to believe"—that a felony has been committed by the person to be arrested. Although it would appear that the conclusions which justify either arrest or the issuance of a search warrant must be supported by evidence of the same degree of probity, it is clear that the conclusions themselves are not identical.

> In the case of arrest, the conclusion concerns the guilt of the arrestee, whereas in the case of search warrants, the conclusions go to the connection of the items sought with crime and to their present location.
>
> [*Ibid.* (citations omitted).]

Fundamentally, arrest warrants and search warrants protect different interests. *See State v. Cleveland,* 371 *N.J.Super.* 286, 297–98, 852 *A.*2d 1150 (App.Div.) (citing *Steagald v. United States,* 451 *U.S.* 204, 212–13, 101 *S.Ct.* 1642, 1648, 68 *L.Ed.*2d 38, 46 (1981), *certif. denied,* 182 *N.J.* 148, 862 *A.*2d 57 (2004)). A search warrant seeking evidence in support of a police investigation into a crime protects individual privacy interests of a suspect, or of a third party, against unreasonable intrusion by police, whereas, an arrest warrant protects against unreasonable seizure of and the resultant loss of liberty to an individual believed to have committed a crime. *Ibid.* (quoting *Steagald, supra,* 451 *U.S.* at 213, 101 *S.Ct.* at 1648, 68 *L.Ed.*2d at 46). The differing purposes affect the focus of each inquiry. *See Dorsey v. State,* 761 *A.*2d 807, 812 (Del.2000) (noting that focus on probable cause to search is upon place, whereas focus on probable cause to arrest is upon person). The magistrate's inquiry in respect of a search warrant must assess the connection of the item sought to be seized 1) to the crime being investigated, and 2) to the location to be searched as its likely present location. *See Warden v. Hayden,* 387 *U.S.* 294, 307, 87 *S.Ct.* 1642, 1650, 18 *L.Ed.*2d 782, 792 (1967); *Jones, supra,* 994 *F.*2d at 1055; *Evers, supra,* 175 *N.J.* at 381, 815 *A.*2d 432.[6] Probable cause to arrest, however, hinges on the distinct and discrete inquiry into whether the person to be arrested has committed or is committing a criminal offense. *See Schneider, supra,* 163 *N.J.* at 363, 749 *A.*2d 336; *Dorsey, supra,* 761 *A.*2d at 812; *State v. Secrist,* 224 *Wis.*2d 201, 589 *N.W.*2d 387, 391, *cert. denied,* 526 *U.S.* 1140, 119 *S.Ct.* 1799, 143 *L.Ed.*2d 1025 (1999). Thus, the factual predicate for a showing of probable cause to

---

[6] The search warrant enables law enforcement to search property where there is reason to believe, to a reasonable probability, that the fruits, instrumentalities, or other evidence of a crime may be found. *See Jones, supra,* 994 *F.*2d at 1055 (citations omitted).

arrest may not be necessarily the same as that required for probable cause to search, as many courts have noted. *See, e.g., Carroll v. United States,* 267 *U.S.* 132, 158, 45 *S.Ct.* 280, 287, 69 *L.Ed.* 543, 554 (1925) ("The right to search and the validity of the seizure are not dependent on the right to arrest."); *United States v. Rojas,* 671 *F.*2d 159, 165 (5th Cir.1982) ("[T]he facts necessary to show probable cause to arrest are not necessarily the same as those required to show probable cause to search."); *United States v. O'Connor,* 658 *F.*2d 688, 693 n. 7 (9th Cir.1981) ("Although courts have generally assumed that the same quantum of evidence is required whether one is concerned with probable cause to arrest or probable cause to seize items found with a person, the same evidence may justify one but not the other." (citations omitted)); *United States v. Melvin,* 596 *F.*2d 492, 495–96 (1st Cir.) (finding probable cause to authorize search warrant of defendant's home despite lack of probable cause to arrest defendant), *cert. denied,* 444 *U.S.* 837, 100 *S.Ct.* 73, 62 *L.Ed.*2d 48 (1979); *Secrist, supra,* 589 *N.W.*2d at 391 ("[W]hile the two determinations [probable cause to search and probable cause to arrest] are measured by similar objective standards, the two determinations require different inquiries."); *see also* LaFave, *supra,* § 3.1(b) (collecting state and federal examples).[7]

---

[7] The Attorney General, as amicus curiae, also draws support for this basic proposition about these distinct probable cause determinations from *Zurcher v. Stanford Daily,* which involved a warrant to search the property of a non-suspect third party for evidence, fruits, or instrumentalities of a crime. 436 *U.S.* 547, 558, 98 *S.Ct.* 1970, 1977–78, 56 *L.Ed.*2d 525, 537 (1978) (allowing search of property of non-suspect notwithstanding lack of any probable cause to arrest that person, stating that so long as "it is established that probable cause exists to believe a ... crime has been committed a warrant may issue for the search of any property which the magistrate has probable cause to believe may be the place of concealment of [fruits, instrumentalities, or] evidence" (citations and internal quotation marks omitted)). As the Attorney General rightfully notes, the *Zurcher* Court recognized that a lack of probable cause to arrest is not fatal to a finding of probable cause to search. *Id.* at 557, 98 *S.Ct.* at 1977, 56 *L.Ed.*2d at 535–36 (citing *Carroll v. United States,* 267 *U.S.* 132, 158–59, 45 *S.Ct.* 280, 287, 69 *L.Ed.* 543, 553–54 (1925) (allowing search of suspect's property where fruits,

 We join those many courts in recognizing that probable cause to arrest and probable cause to search involve distinct and not necessarily identical inquiries. A finding of probable cause as to one does not mean that probable cause as to the other must follow, nor does the lack of one compel a finding that there is a lack of support for the other. Although a probable cause determination that an individual committed a crime may increase the likelihood that the individual's residence contains evidence of the crime, a court may find a lack of probable cause to arrest an individual and yet determine that probable cause exists to search the home where that individual resides. *See, e.g., Jones, supra,* 994 *F.*2d at 1055–56; *Melvin, supra,* 596 *F.*2d at 495–96. Simply put, a probable cause determination to search a home where the suspect lives may be valid irrespective of whether probable cause to arrest that particular individual has crystallized. *See, e.g., Jones, supra,* 994 *F.*2d at 1055–56; *Melvin, supra,* 596 *F.*2d at 495–96.

## III.

 We turn then to defendant's argument in the present matter. In light of our prior discussion of the law, it is readily apparent that there is no basis to hold, as a matter of law, that *Chippero I* compels the suppression of the evidence seized from 49 Poe Road. Even if the State's concession to defendant's illegal arrest during *Chippero I* is treated as a substantive concession,[8] the after-the-fact determination of a lack of probable cause to arrest defendant does not equate, perforce, to a lack of probable cause to search 49 Poe Road. The critical and only question is

---

instrumentalities, or evidence of crime are present, but probable cause to arrest is lacking)).

[8] It is unnecessary to the resolution of this appeal whether the State's concession was meant to be substantially binding or was advanced as an argument tactic for the purpose of narrowing the legal dispute focused on defendant's confession.

whether a sufficient showing of probable cause to search was presented to the warrant-issuing judge.

In respect of the substance of the probable cause determination made back in 1991, we have no doubt, given all that Judge Figarotta heard during the in camera proceedings on the warrant application, that he could have found to a reasonable probability that evidence from the sexual assault and murder of Tocci might be found inside the neighboring mobile home at 49 Poe Road. The search warrant, authorizing the police to pursue their criminal investigation through a search for specific evidence believed to be located at 49 Poe Road (namely the items of clothing worn by the individual seen by McMenemy, any other blood-stained clothing, and a knife fitting the description of the presumed murder weapon), was a reasonable exercise of his authority.

Judge Figarotta was told that a disinterested person saw someone, within minutes of the estimated time of the homicide, run from the vicinity of the front area of the victim's home to the premises at 49 Poe Road and enter it. The person appeared sweaty, his clothing appearing wet and sticking to him as if from some sort of exertion. He appeared anxious to get out of his shirt, pulling at it to get it off of him as he entered the home. We know that the murder scene showed that the rape and stabbing of the victim required a not inconsiderable effort and that much blood was spilled. The issuing court is required only to make a practical and realistic evaluation of the information presented on the issue of probable cause. *State v. Kasabucki*, 52 *N.J.* 110, 117, 244 *A.*2d 101 (1968) (stating that supporting "statements must be looked at in a common sense way").

Our role on appeal is limited. All we need to determine is whether the application made to Judge Figarotta provided sufficient evidence for his finding of probable cause to search the premises for the items authorized. *See Jones, supra,* 994 *F.*2d at 1055. We do not review the transcript of the proceeding before Judge Figarotta to determine for ourselves as factfinders whether

it actually established probable cause. Nor, as a reviewing court, will we bring a "grudging or negative attitude." *Kasabucki, supra,* 52 *N.J.* at 117, 244 *A.*2d 101. That would be inconsistent with the Fourth Amendment preference for searches conducted pursuant to a warrant, which is exactly the type of search that occurred here. Rather, as a reviewing court we "should pay substantial deference to the issuing court's finding of probable cause." *State v. Perry,* 59 *N.J.* 383, 393, 283 *A.*2d 330 (1971) (citation omitted).

We conclude that the issuing judge could have found from the record recited above that a reasonable probability existed to show that the person McMenemy saw may have had a connection with the crime and may have had on him, or on his clothing, evidence connected to the sexual assault and murder. That showing provided a substantial basis for the probable-cause-to-search determination that was made by the court on July 25, 1991. The obligation to ensure that the issuing judge had sufficient evidence to support his determination of probable cause to search the 49 Poe Road premises for the items authorized has been met.

## IV.

The judgment of the Appellate Division is reversed. This matter is remanded to the Appellate Division for consideration of defendant's unaddressed points on appeal.

*For reversal and remandment*—Chief Justice RABNER and Justices LONG, LaVECCHIA, ALBIN, WALLACE, RIVERA–SOTO, and HOENS—7.

*Opposed*—None.