SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

**State v. Shlawrence Ross (A-34-22) (087823)**

**Argued September 11, 2023 -- Decided March 5, 2024**

**PIERRE-LOUIS, J., writing for a unanimous Court.**

In this appeal, the Court considers whether the State can obtain physical evidence from a hospital -- a bullet extracted from defendant's body via surgical procedure -- pursuant to a search warrant.

On December 3, 2017, defendant Shlawrence Ross allegedly exchanged gunfire with police officers. Officers arrested defendant and transported him to Cooper University Hospital to obtain treatment for his gunshot wounds. Defendant was later indicted for attempted murder and other offenses, and the prosecutor's office asked the hospital whether any bullet or metal fragments were removed from defendant's body. A hospital employee responded that an X-ray located a bullet in defendant's abdomen, but the treating physician did not remove it.

In June 2022, on the advice of counsel, defendant underwent elective surgery to remove that bullet. Defense counsel coordinated with the hospital to have her investigator take possession of the bullet after the surgery. Post-surgery, however, the hospital's director of security contacted law enforcement regarding the removal of the bullet and did not turn it over to the defense.

The State applied for an ex parte search warrant to obtain from Cooper Hospital the bullet and any fragments removed from defendant's body during the elective surgery. The State also applied for a subpoena seeking all medical records regarding defendant's treatment and transportation.

The trial court denied the applications, finding that the discovery rules shielded the bullet from the State's access because the bullet's existence was the result of defense counsel's "conscious litigation choice." The trial court did not explain its reasons for denying the subpoena. Concluding that the Fourth Amendment, rather than the Sixth Amendment and reciprocal discovery rules, was the appropriate legal framework, the Appellate Division reversed and remanded to the trial court to determine whether probable cause existed to issue a search warrant and a subpoena. The Court granted leave to appeal. 253 N.J. 394 (2023).

1

**HELD:** The proper analysis for determining whether the State can obtain this physical evidence rests within the principles of search and seizure under the Fourth Amendment. Neither the Fifth nor the Sixth Amendment would preclude issuing a valid search warrant for the bullet in this case, and the trial court should have determined whether there exists probable cause on which to issue such a warrant.

1. The State applied for a search warrant, asserting that there was probable cause to believe that evidence related to the alleged offenses committed on December 3, 2017 was in Cooper Hospital's possession. Instead of determining whether probable cause existed to issue the warrant, the trial court analyzed the bullet evidence through the lens of reciprocal discovery and determined that the State was not entitled to access the bullet because its extraction was precipitated by defense counsel's litigation choice. That is the incorrect analysis. The bullet in this case is physical evidence related to a criminal offense. Defendant has been charged with attempted murder, among other offenses, and the bullet extracted from defendant's abdomen is physical evidence of relevant events. A search warrant is therefore the proper means for the State to obtain the evidence. (pp. 12-13)

2. Defendant argues that the constitutional protections offered by the Fifth and Sixth Amendments bar the State from obtaining the bullet. In State v. Knight, the Court held today that "[c]ompelling defense counsel to turn over in discovery an item in his possession that is physical evidence of a crime does not trigger" Sixth Amendment concerns. ___ N.J. ___, ___ (2024) (slip op. at 22). The Court further ruled that State v. Mingo, 77 N.J. 576 (1978), and State v. Williams, 80 N.J. 472 (1979), were inapplicable to the factual scenario in Knight because the materials at issue in Knight were physical evidence, not the product of the defense investigation. Like the affidavits in Knight, the bullet in this case is nothing like the information the State sought in Mingo and Williams. Physical evidence of a crime cannot be shielded from the State simply by defense counsel obscuring the evidence under the cloak of the Sixth Amendment right to effective assistance of counsel. Notwithstanding the fact that defense counsel suggested the elective surgery, and irrespective of any agreements defense counsel believed she had with Cooper Hospital, the subject item is physical evidence and is reachable via search warrant if probable cause is established. Regarding the Fifth Amendment, as stated in Knight, the privilege against self-incrimination is a personal one and cannot be asserted by or on behalf of third parties. See ___ N.J. at ___ (slip op. at 24). Here, defendant is attempting to do just that. (pp. 13-17)

**AFFIRMED and REMANDED for a determination of probable cause.**

**CHIEF JUSTICE RABNER and JUSTICES PATTERSON, SOLOMON, WAINER APTER, FASCIALE and NORIEGA join in JUSTICE PIERRE-LOUIS's opinion.**

2

SUPREME COURT OF NEW JERSEY

A-34 September Term 2022

087823

State of New Jersey,

Plaintiff-Respondent,

v.

Shlawrence Ross,

Defendant-Appellant.

On appeal from the Superior Court,
Appellate Division.

| Argued | Decided |
|---|---|
| September 11, 2023 | March 5, 2024 |

Monika Mastellone argued the cause for appellant (Law Offices of Robin Kay Lord, attorneys; Monika Mastellone and Robin Kay Lord, on the briefs).

Maura M. Sullivan, Assistant Prosecutor, argued the cause for respondent (Grace C. MacAulay, Camden County Prosecutor, attorney; Maura M. Sullivan, of counsel and on the briefs).

Adam D. Klein, Deputy Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (Matthew J. Platkin, Attorney General, attorney; Adam D. Klein, of counsel and on the brief).

Scott M. Welfel, Assistant Deputy Public Defender, argued the cause for amicus curiae Public Defender of

1

New Jersey (Joseph E. Krakora, Public Defender, attorney; Scott M. Welfel, of counsel and on the brief).

Brian W. Carroll argued the cause for amicus curiae Association of Criminal Defense Lawyers of New Jersey (McCarter & English, attorneys; Brian W. Carroll, Robert A. Mintz, Michelle Pallak Movahed, and Brendan E. Ashe, on the brief).

JUSTICE PIERRE-LOUIS delivered the opinion of the Court.

In this appeal, we are asked to determine whether the State can obtain physical evidence from a hospital -- a bullet extracted from defendant's body via surgical procedure -- pursuant to a search warrant.

Over four years after defendant Shlawrence Ross allegedly exchanged gunfire with police officers, he underwent elective surgery to have the bullet that was lodged in his abdomen removed. Defense counsel coordinated with the hospital where the surgery was conducted to have her investigator take possession of the bullet after the surgery. Post-surgery, however, the hospital's director of security contacted law enforcement regarding the removal of the bullet and did not turn it over to the defense.

The State subsequently sought a search warrant to obtain the bullet from the hospital. The trial court denied the search warrant application and the State's application for a subpoena seeking defendant's medical records regarding the surgery. The Appellate Division reversed, holding that the trial

2

court erred in applying discovery rules as opposed to search warrant principles to its analysis of the search warrant application. The Appellate Division remanded the matter for the trial court to determine whether probable cause existed for the issuance of the search warrant.

We granted defendant's motion for leave to appeal and now affirm. The proper analysis for determining whether the State can obtain this physical evidence rests within the principles of search and seizure under the Fourth Amendment. The Appellate Division properly remanded the matter for a determination of whether probable cause existed to issue a search warrant to the hospital -- a third party -- that is in possession of physical evidence related to a criminal offense.

## I.

### A.

We derive the facts throughout this opinion from the pretrial record.

On December 3, 2017, at approximately 3:50 a.m., Camden County Metropolitan Police Department (Camden County Police) officers were conducting an unrelated investigation in the area of Louis and Chestnut Streets in Camden when they heard gunfire nearby. At the time, defendant had attempted to re-enter a bar or "speakeasy" located at 1120 Louis Street but was denied entry after a pat-down revealed defendant had a handgun in his

3

possession. Defendant then reached for his gun, after which a struggle ensued, causing him to discharge the weapon one time inside the building. Defendant was removed from the bar and walked away from the building down Louis Street.

When officers arrived at the bar, a witness pointed them in defendant's direction. As the officers continued on Louis Street, they encountered defendant, who allegedly fired at least one shot at them. Officers returned fire, striking defendant multiple times: once in each hip with .32 caliber bullets and once in one elbow with a .40 caliber bullet. After a brief foot chase that led the officers onto Sycamore Street, officers arrested defendant and transported him to Cooper University Hospital (Cooper Hospital) in Camden to obtain treatment for his gunshot wounds, including emergency surgery. While canvassing the crime scene, officers recovered a .32 caliber handgun on the sidewalk on Sycamore Street, and two .32 caliber shell casings, one located inside, and the other located outside the bar at 1120 Louis Street.

The next day, defendant gave a statement to officers while at Cooper Hospital. Defendant stated that he was at a party at the bar, and that he left to go to the store but was denied reentry upon returning. Defendant claimed he was forced back onto the street and shot shortly thereafter, but he did not know who shot him or why.

4

In February 2018, a grand jury indicted defendant on three counts of first-degree attempted murder, three counts of second-degree aggravated assault, three counts of fourth-degree aggravated assault, second-degree possession of a weapon for an unlawful purpose, and second-degree unlawful possession of a weapon.

In July 2018, the Camden County Prosecutor's Office asked Cooper Hospital whether the treating physicians had removed any bullet or metal fragments from defendant's body during his surgery. A hospital employee responded that an X-ray located a bullet in defendant's abdomen, but the treating physician did not remove it.

In 2021, the State moved to compel discovery of "any physical evidence, reports, records, or other materials" concerning defendant's wounds. The State explained that it had no other basis to identify the bullets that struck defendant. The trial court denied the State's motion to compel discovery. The court reasoned that, under State v. Williams, 80 N.J. 472 (1979), and Rule 3:13-3, the State was not entitled to those materials unless the defense planned to use or rely on them at trial. A week later, defendant was released from custody while awaiting trial.

In 2022, on the advice of counsel, defendant decided to undergo elective surgery to remove the bullet that had remained lodged in his abdomen since

5

the December 2017 incident. On June 9, 2022, defense counsel sent a letter to Cooper Hospital requesting that it turn the bullet over to defense counsel's investigator after the surgery. Defense counsel represented that her office had multiple communications about the bullet with hospital staff, who "all agreed" to the defense's request to take possession of the extracted bullet post-surgery.

On June 15, 2022, physicians removed the bullet from defendant's body and turned it over to Joseph Campbell, the Administrative Director of Security at Cooper Hospital, pursuant to hospital policy. Thereafter, a hospital employee contacted defense counsel, confirmed that physicians had removed the bullet, and told counsel where to pick it up. After receiving the bullet, however, Campbell contacted a Camden County Police officer to inquire whether the bullet concerned a police matter. The officer informed Campbell that the bullet was tied to an active case assigned to the Camden County Prosecutor's Office. Thereafter, Campbell stored the bullet in anticipation that law enforcement officials would follow up, and he refused to turn it over to defense counsel's investigator.

B.

On June 30, 2022, the State applied for an ex parte search warrant to obtain from Cooper Hospital the bullet and any fragments removed from defendant's body during the elective surgery. The State also applied for a

6

Dyal[1] subpoena seeking all medical records that Cooper Hospital created regarding defendant's treatment and transportation from the day of the surgery until defendant's discharge. On July 7, 2022, the trial court advised defendant of the State's applications, permitting him to oppose them at a hearing.

After hearing oral argument on the motion, the trial court denied the State's applications and held that defense counsel was entitled to take possession of the bullet and any fragments from Cooper Hospital according to the arrangements that defense counsel made with hospital staff before defendant's surgery. The trial court found that the discovery rules shielded the bullet from the State's access because the bullet's existence was the result of defense counsel's "conscious litigation choice." The court reasoned that, under Williams, 80 N.J. at 479, "the defense is entitled to conduct an investigation and . . . to keep the results of that investigation to itself unless and until the defense chooses to use that information at trial."

The trial court further explained that if defense counsel tested the bullet, she would have to disclose the test results to the State only if she intended to

---

[1] A Dyal subpoena is an application to the court for the issuance of a subpoena to obtain medical records. State v. Dyal, 97 N.J. 229, 240 (1984). In Dyal, this Court determined that, in light of the protection accorded to medical records due to the doctor-patient privilege, subpoenas for medical records are to be treated "as the functional equivalent of a search warrant" and issued only upon a showing of probable cause. Id. at 241.

use them at trial. According to the trial court, because the bullet would not even be available to the State if not for the defense's conscious litigation decision, it was "up to the defense to decide what it chooses to do" with it. The trial court did not explain its reasons for denying the Dyal subpoena. The next day, the State applied for a stay of the trial court's order pending its interlocutory appeal to the Appellate Division, which the trial court denied.

The Appellate Division granted the State's motion for leave to appeal and its emergent application for a temporary stay of the trial court's order. The State argued that the trial court erred by applying discovery rules rather than the Fourth Amendment to the State's warrant and Dyal subpoena applications.

In an unpublished opinion, the Appellate Division reversed and remanded the matter to the trial court to determine whether probable cause existed to issue a search warrant and a Dyal subpoena. The Appellate Division observed that the trial court had accepted defendant's claim that the bullet was "a fruit of the defense investigation strategy to undergo elective surgery" and had therefore treated the search warrant application "as if it were a motion to compel reciprocal discovery." The Appellate Division concluded that the Fourth Amendment, rather than the Sixth Amendment and reciprocal discovery rules, provided the appropriate legal framework because the State sought a

8

search warrant and a <u>Dyal</u> subpoena to obtain physical evidence in a third party's possession. The Appellate Division found it irrelevant whether Cooper Hospital defied any purported agreement or understanding with defendant to turn the bullet over to defense counsel's investigator.

Defendant subsequently filed a motion for leave to appeal the Appellate Division's judgment, which we granted. 253 N.J. 394 (2023). We also granted the applications of the Attorney General, the Association of Criminal Defense Lawyers of New Jersey (ACDL), and the Public Defender to participate as amici curiae.

## II.

## A.

Defendant urges this Court to reverse the Appellate Division's judgment and reinstate the trial court's order denying the State's search warrant and <u>Dyal</u> subpoena applications. Defendant argues that the State cannot compel him to disclose inculpatory evidence discovered through a defense investigation in preparation for trial because doing so violates his Sixth Amendment right to effective assistance of counsel, which includes a right to conduct a confidential investigation. Defendant asserts that the Appellate Division erred in finding that the bullet was in a third party's custody; rather, defendant insists the bullet remained in his constructive possession. Defendant

9

reasons that Cooper Hospital physicians acted as his agents when they performed the elective surgery and only temporarily possessed the bullet, with the understanding that hospital staff would give the bullet to the defense. Defendant claims that the Cooper Hospital physicians were no different from experts retained by the defense to conduct evaluations as part of the defense's pretrial investigation.

Defendant additionally argues that his Fifth Amendment privilege against self-incrimination bars the State from using a search warrant to obtain physical evidence from the defense. He claims that the Fifth Amendment affords protection against the State when it seeks to "rip evidence from the hands of the defense."

The Public Defender and the ACDL, appearing as amici, support defendant's arguments. Amici echo defendant's assertion that his litigation choice to remove the bullet and Cooper Hospital's agreement on this matter turned the hospital into defendant's agent for purposes of his Sixth Amendment right to effective assistance of counsel. The Public Defender adds that defendant's right to effective assistance of counsel shields evidence that defense counsel or defendant's agent generates or makes available for investigative purposes that would not otherwise exist or be available to the State. The ACDL adds that resolving the Sixth Amendment claim obviates the

10

need to address the Fifth Amendment issue, but that the latter's protection against self-incrimination counsels against issuing the search warrant.

B.

The State urges this Court to affirm the Appellate Division's judgment on Fourth Amendment grounds because the bullet is physical evidence related to a crime and its existence preceded any defense investigation. The State reasons that the evidence existed because police shot defendant when they exchanged gunfire at the crime scene, not because of defense counsel's investigation or trial preparation. The State asserts that it did not seek to compel defendant to disclose anything; rather, it applied for a search warrant and a Dyal subpoena to access evidence in a third-party's custody.

The Attorney General, appearing as amicus curiae, echoes the State's argument that the use of a valid search warrant to secure physical evidence of a crime in a third party's custody does not implicate a defendant's Sixth Amendment right to effective assistance of counsel. The Attorney General adds that the requested search warrant would not improperly "compel" defendant because it is not an order to compel reciprocal discovery, the bullet is not akin to attorney work product, and the bullet may be exculpatory.

11

III.

A.

We first address the appropriate legal framework within which to assess the State's effort to obtain the bullet for use in its prosecution of defendant.

Here, the State applied for a search warrant and detailed through an officer's affidavit the shooting incident on December 3, 2017. The affidavit further provided the officer's knowledge regarding defendant's June 2022 surgery to remove the bullet that remained lodged in his abdomen and the fact that the extracted bullet was in Cooper Hospital's possession. In sum, the search warrant application asserted that there was probable cause to believe that evidence related to the alleged offenses committed on December 3, 2017 was in Cooper Hospital's possession. See State v. Gathers, 234 N.J. 208, 223-24 (2018) ("Probable cause for the issuance of a search warrant requires 'a fair probability that contraband or evidence of a crime will be found in a particular place.'") (quoting State v. Chippero, 201 N.J. 14, 28 (2009)).

Instead of determining whether probable cause existed to issue the warrant, the trial court analyzed the bullet evidence through the lens of reciprocal discovery and determined that the State was not entitled to access the bullet because its extraction was precipitated by defense counsel's litigation choice.

12

We hold that to be the incorrect analysis. The bullet in this case is physical evidence related to a criminal offense. Defendant has been charged with attempted murder, among other offenses, related to the December 3, 2017, incident during which he allegedly fired a gun at police, prompting officers to return fire. The bullet extracted from defendant's abdomen is physical evidence of that evening's events. A search warrant is therefore the proper means for the State to obtain the evidence.

B.

Defendant argues that, regardless of the mechanism used to seek the bullet, the constitutional protections offered by the Fifth and Sixth Amendments to the United States Constitution bar the State from obtaining the bullet.

Our holding today in State v. Knight controls regarding defendant's constitutional arguments. See ___ N.J. ___, ___ (2024) (slip op. at 3). In Knight, the defendant was charged with murder and two witnesses identified him as the shooter. Id. at ___ (slip op. at 3-4). One witness was allegedly lured to a house by a woman he communicated with on social media and forced at gunpoint by several individuals to draft an affidavit recanting his identification of the defendant. Id. at ___ (slip op. at 5). Believing that the assailants gave the alleged forced recantation affidavit to the defendant's

13

attorney, the State moved to compel discovery of that affidavit (and possibly a second affidavit from the other eyewitness) from defense counsel pursuant to reciprocal discovery Rule 3:3-13(b)(2). Id. at ___ (slip op. at 7-8).

In upholding the trial court's grant of the State's motion to compel, we held that the sought-after affidavits in that case were physical evidence of a crime and, therefore, "discoverable pursuant to our discovery rules and [] neither the Fifth nor Sixth Amendment shield their production." Id. at ___ (slip op. at 21). Although the State sought access to the affidavits in question in Knight via the court rules governing defendants' reciprocal discovery obligations rather than via search warrant, as occurred here, the same reasoning applies in both matters with regard to the rights of criminal defendants under the Fifth and Sixth Amendments.

In Knight, we held that "[c]ompelling defense counsel to turn over in discovery an item in his possession that is physical evidence of a crime does not trigger" Sixth Amendment concerns. Id. at ___ (slip op. at 22). We further ruled that this Court's holdings in State v. Mingo and State v. Williams were inapplicable to the factual scenario in Knight because the materials at issue in that case were physical evidence, not the product of the defense investigation. Id. at ___ (slip op. at 23) (discussing Mingo, 77 N.J. 576, 580 (1978), in which the State sought to compel disclosure of an inculpatory

14

defense expert report that the defendant did not intend to use or rely on at trial, and Williams, 80 N.J. at 476, in which the State sought disclosure of victim interview memoranda prepared by defense counsel and pictures shown to the victim during the interview).

Like the affidavits in Knight, the bullet in this case is nothing like the information the State sought in Mingo and Williams. Here, the bullet is physical evidence that came into existence at the time of the alleged criminal offense. The bullet did not materialize as a result of defense counsel's pretrial investigation, nor did it come into existence because defense counsel recommended that defendant undergo elective surgery to have the bullet removed.

Defendant's agency argument, in which he argues that the hospital employees acted as his agents similar to an expert retained to complete a pretrial expert report, is also unpersuasive. The bullet in this case is nothing like the expert report in Mingo. The bullet itself predated the defense investigation and existed even before defense counsel's representation of defendant. Contrary to defendant's argument, the bullet is not a fruit of the defense investigation; rather, it is a "fruit[], instrumentalit[y], or other evidence of a crime." Chippero, 201 N.J. at 29 n.6.

15

Such an item is not subject to the same Sixth Amendment analysis that was relevant in <u>Mingo</u> and <u>Williams</u>. It frankly cannot be that physical evidence of a crime can be shielded from the State simply by defense counsel obscuring the evidence under the cloak of the Sixth Amendment right to effective assistance of counsel. Notwithstanding the fact that defense counsel suggested the elective surgery, and irrespective of any agreements defense counsel believed she had with Cooper Hospital, the subject item is physical evidence and is reachable via search warrant if probable cause is established.

Regarding the Fifth Amendment, as we stated in <u>Knight</u>, the privilege against self-incrimination is a personal one and cannot be asserted by or on behalf of third parties. See <u>Knight</u>, ___ N.J. at ___ (slip op. at 24). Defendant is attempting to do just that: assert his Fifth Amendment privilege against self-incrimination in response to a warrant that would be served upon a third party -- Cooper Hospital. Defendant argues that "the Fifth Amendment affords its protections whether the state uses a subpoena or a search warrant to rip evidence from the hands of the defense." The moment the bullet was extracted from defendant's body, Cooper Hospital alone possessed the bullet, which triggered its statutory reporting obligations regarding an injury occasioned by

16

a firearm.[2] No evidence is being ripped from defendant's hands as Cooper Hospital is in possession of the bullet and the search warrant, if issued, would be served on the hospital, not on defendant.

In sum, neither the Fifth nor the Sixth Amendment would preclude issuing a valid search warrant for the bullet in this case, and the trial court should have determined whether there exists probable cause on which to issue such a warrant.

IV.

For the foregoing reasons, we affirm the Appellate Division's judgment and remand this matter to the trial court to determine whether the State has established probable cause for the issuance of the search warrant and the Dyal subpoena.

---

[2] Defendant also argues that in advising the State that the hospital had performed the surgery and was in possession of the bullet, Cooper Hospital violated the privacy provisions of HIPAA, the Federal Health Insurance Portability and Accountability Act of 1996, 42 U.S.C. §§ 1320d-1 to -9, which regulates the use and disclosure of personal medical information. Defendant's argument, however, is inconsistent with New Jersey statutes. Pursuant to N.J.S.A. 2C:58-8(a), Cooper Hospital was statutorily required to report to law enforcement officials the extraction of a bullet from a hospital patient and properly complied with that statute in doing so.

CHIEF JUSTICE RABNER and JUSTICES PATTERSON, SOLOMON, WAINER APTER, FASCIALE and NORIEGA join in JUSTICE PIERRE-LOUIS's opinion.