STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. NORMAN LEE PERRY, DEFENDANT-RESPONDENT.

Argued September 28, 1971—Decided November 8, 1971.

*Mr. Joseph A. Fusco,* Assistant Prosecutor, argued the cause for plaintiff-appellant (*Mr. Joseph P. Lordi,* Prosecutor of Essex County, attorney; *Mr. Joseph A. Fusco,* of counsel and on the brief).

*Mr. Richard Newman,* Designated Counsel, argued the cause for defendant-respondent (*Mr. Stanley C. Van Ness,* Public Defender, attorney; *Mr. Richard Newman* on the brief).

The opinion of the Court was delivered by

PROCTOR, J. The primary issue in this case has to do with the legal sufficiency of an affidavit for a search warrant.

The defendant Perry and one Watkins were found guilty by a jury in the Essex County Court of armed robbery of a bus driver in the City of Orange on the night of March 19, 1968. Only Perry appealed. The Appellate Division in an unreported opinion held that there was evidence from which the jury could find beyond a reasonable doubt that Perry was one of the two culprits. However, it reversed the conviction on the ground that the revolver used in the holdup, the money changer and coin bag taken from the driver which were found in Perry's apartment were improperly admitted in evidence. It held these items were obtained in execution of a search warrant based upon a legally insufficient affidavit. We granted the State's petition for certification. 57 *N. J.* 598 (1971).

Perry and Watkins did not move to suppress the seized items before the trial. Rather, their motions were made

during the course of the trial when the State offered the revolver in evidence. The trial judge entertained the motions to suppress over the State's objection that they were not timely made under *R. R.* 3:2A-6[1] because Perry had pleaded on June 3, 1968, to an indictment charging the same offense. He failed to make a motion to suppress during the period between his initial plea and the trial which commenced on October 8, 1968. The trial judge held that the matter then before him was being tried pursuant to a joint indictment to which Perry and Watkins pleaded on the day before the trial[2] and, therefore, the motions were timely made. He further said that since it was conceded that Watkins' motion to suppress the items seized was made within 30 days after his initial plea to the joint indictment and must be heard, it would be discriminatory to hear one defendant's motion without the other. Without passing on this ruling as to the timeliness of Perry's motion, we are of the opinion that both Watkins' and Perry's motions should not have been entertained during the course of the trial. Rather, the defendants should have moved to postpone the trial until the motions were disposed of. *R. R.* 3:2A-6 expressly provides that a motion to suppress must be determined before trial unless the court finds that a defendant could not reasonably have done so. The trial

---

[1] The rule, *R. R.* 3:2A-6 (now *R.* 3:5-7), in pertinent part provides:
such motion [to suppress] shall be made within 30 days after the initial plea to the charge unless for good cause the court shall enlarge the time.

[2] It appears that on May 21, 1968, Perry was indicted for the same crime. On June 3, 1968, he pleaded to that indictment. Watkins was not indicted until September 24, 1969, because prior to that time it was believed he was a juvenile. The September 24 indictment named both Watkins and Perry as the culprits in the Orange robbery. They pleaded to this indictment on October 7, 1968. The trial commenced the following day. The May 21 indictment against Perry was dismissed as it had been superseded by the joint indictment.

court made no such finding and the defendants gave no satisfactory reason for their failure to move to suppress prior to trial. The rule is reasonable and must be met if there is to be order in the judicial process. *State v. Broxton,* 49 *N. J.* 373, 388 (1967).

While this case could be disposed of for the above reason, we prefer to base our holding on the ground that the affidavit was constitutionally sufficient.

At the suppression hearing Perry did not attack the sufficiency of the affidavit upon which the search warrant was issued, but merely challenged its accuracy contending that the apartment belonged solely to Watkins. The trial judge found that there was substantial evidence that Perry was in control of the apartment. We agree with this finding and no point of that is made on this appeal. In denying the motion the trial judge also passed on the sufficiency of the affidavit and held that it was "ample" to justify the issuance of the search warrant.

It was established at the trial that on March 20, 1968, the day after the holdup, Detective Wioland of the Newark Police Department applied to a magistrate of that city for a search warrant for Perry's third floor apartment in a three family house at 872 Hunterdon Street, Newark. At the time of this application, the detective did not know of the robbery of the bus driver the night before in Orange. His application, with his supporting affidavit, was based on the belief that Perry was the possessor of property taken in robberies and larcenies unconnected with the holdup. His affidavit sets forth in pertinent part:

* * * information received by him from a reliable informant, who has in the past given reliable information leading to arrests, that stolen property can be located at the apartment of Norman Perry, 872 Hunterdon St. 3rd floor. Property consisting of the following, monies, jewelry, doctors bag, Narcotics (barbititates [sic], and narcotic paraphernalia).

On March 20, 1968 the undersigned was informed by said informant that monies, jewelry doctor's bag, and narcotic (barbititates [sic] and narcotic paraphernalia), taken during assault and robberies, Larcenies, CC# 15720 and 15721, which proved to be in fact true. 872 Hunterdon St. is a three family house, located next to 870 Hunterdon St., which is a one family house owned by a Mr. & Mrs. O'Connell. 872 Hunterdon St. is a gray house.

I have just and reasonable cause to believe that the above mentioned items are concealed in the apartment of Norman Perry, located 872 Hunterdon St., City of Newark, N. J. County of Essex, State of New Jersey, and I have just cause to suspect that the occupant of the apartment, Norman Perry are violating the law commonly known as Possession of Stolen Property, 2A:139-1, Possession of Narcotics (Legend Drugs) 2A:170-77.8, contrary to the statue [sic] in such case made and provided.

The warrant was issued and the search was made that same day. During the search the revolver used in the holdup, the change carrier and coin bag taken from the bus driver, among other items, were found by the police.

On Perry's appeal to the Appellate Division, he raised for the first time, without objection by the State, his contention that the affidavit was insufficient. *Cf. State v. Wright,* 113 *N. J. Super.* 79, 81 (App. Div. 1971). The Appellate Division upheld this contention finding the affidavit did not show that the informant was credible and did not sufficiently state the underlying circumstances from which the informant concluded that the defendant possessed contraband. It found that there was nothing more in the affidavit than the recitals in *State v. Burrachio,* 39 *N. J.* 272 (1963); *Aguilar v. Texas,* 378 *U. S.* 108, 84 *S. Ct.* 1509, 12 *L. Ed. 2d* 723 (1964) and *Spinelli v. United States,* 393 *U. S.* 410, 89 *S. Ct.* 584, 21 *L. Ed. 2d* 637 (1969). The Appellate Division concluded that it was compelled by those decisions to hold that the affidavit in the present case was similarly insufficient. We disagree.

In our case of *Burrachio,* the application for a warrant was based solely on information given to the affiant "to the effect that bookmaking and lottery are being conducted" in the described premises. In holding that the affidavit was in-

sufficient we said, "[s]o far as the showing before the [issuing] judge was concerned the information may well have been based entirely on an anonymous telephone call or on common rumor. While that might support the officer's suspicion, it is not, without more, probable cause for search." 39 *N. J.* at 276. Further, there was not even a suggestion that the informant was a reliable person.

In *Aguilar* a warrant was issued on nothing more than an affidavit by the police officers that they had "received reliable information from a credible person and do believe" that narcotics were stored on the described premises. The Court recognized that probable cause to issue a search warrant can be satisfied by hearsay information but held that the affidavit was inadequate for two reasons. First, the affidavit did not contain any of the "underlying circumstances" necessary to enable the magistrate independently to judge the validity of the informant's conclusion that the narcotics were stored where he said they were. Second, there was no attempt to justify the affiants' claim that their informant was " 'credible' or his information 'reliable.' " 378 *U. S.* at 114, 84 S. Ct. at 1514, 12 *L. Ed. 2d* at 729. The Supreme Court has since referred to this formulation as *"Aguilar's* two-pronged test," *Spinelli, supra,* 393 *U. S.* at 413, 89 S. Ct. at 587, 21 *L. Ed. 2d* at 642.

In *Spinelli,* an F. B. I. agent made an affidavit stating that the Bureau "has been informed by a confidential reliable informant that William Spinelli is operating a handbook and accepting wagers and disseminating wagering information by means of the telephones which have been assigned the numbers WYdown 4–0029 and WYdown 4–0136." The Court, in applying *"Aguilar's* two-pronged test" held that the affidavit did not contain a sufficient statement of the "underlying circumstances" upon which the informant based his conclusion, and that there was no support for the affiant's assertion that his informant was reli-

able. 393 *U. S.* at 416, 89 S. Ct. at 589, 21 *L. Ed. 2d* at 643.[3]

In sharp contrast to *Burrachio, Aguilar* and *Spinelli,* the affidavit in the present case sets forth reasons for the affiant's assertion that his informant is reliable. The affidavit expressly states that Detective Wioland has had satisfactory experience with the informant. Such support is sufficient to establish an informant's reliability. See *United States v. Rich,* 407 *F. 2d* 934 (5th Cir.), *cert. denied,* 395 *U. S.* 922, 89 S. Ct. 1775, 23 *L. Ed. 2d* 239 (1969). *Cf. McCray v. Illinois,* 386 *U. S.* 300, 87 *S. Ct.* 1056, 18 *L. Ed. 2d* 62 (1967). Thus, unquestionably, the affidavit satisfies the second "prong" of the *Aguilar* test.

We now turn to the first "prong" of the *Aguilar* test, *i.e.*, the magistrate must be informed of some of the "underlying circumstances" from which the informant concluded that Perry was in possession of stolen property. It is true that the affidavit in this case recites no factual allegations by the informant of his own experience regarding the existence of stolen property in Perry's apartment. However, we can appreciate that disclosure of specific information about the

---

[3]There was also evidence that the police saw defendant's car on several occasions parked at the apartment house lot and on one occasion he was seen to enter the apartment house. Also, a check of the telephone company revealed that the apartment contained two telephones, listed under the name of a person other than the defendant and carrying the same numbers set forth in the affidavit. Further, the application stated that Spinelli was known to the affiant as a bookmaker and an associate of bookmakers. The court held that these activities, the telephone identifications and defendant's reputation "contain no suggestion of criminal conduct when taken by themselves — and they are not endowed with an aura of suspicion by virtue of the informer's tip." 393 *U. S.* at 418, 89 S. Ct. at 590, 21 *L. Ed. 2d* at 645. In other words, the evidence offered in support of the tip was not sufficiently corroborative to warrant a finding of probable cause. Recently the Supreme Court has overruled *Spinelli* to the extent that it prohibited the use of a policeman's knowledge of a suspect's reputation in assessing the reliability of an informant's tip. *United States v. Harris,* 403 *U. S.* 573, 91 S. Ct. 2075, 29 *L. Ed. 2d* 723, 733 (1971).

informant's source of knowledge may increase the chances that his identity may be revealed. Once an informant's identity is known his usefulness for future law enforcement is at an end. Undoubtedly recognizing this factor, the Supreme Court in *Spinelli* stated that an informant's tip may describe "the accused's criminal activity in sufficient detail that the magistrate may know that he is relying on something more substantial than a casual rumor circulating in the underworld \* \* \*" and, thus, satisfy the first "prong." 393 *U. S.* at 416, 89 *S. Ct.* at 589, 21 *L. Ed. 2d* at 644. The Court in that case found that the detail provided by the informant's tip, namely, two separate telephones and their numbers, was not sufficient to permit the magistrate to make an informed judgment as to the reliability of the information. The Court said: "There is surely nothing unusual about an apartment containing two separate telephones. Many a householder indulges himself in this petty luxury." 393 *U. S.* at 414, 89 S. Ct. at 588, 21 *L. Ed. 2d* at 642–43. By way of illustration of the type of detail necessary to satisfy the standard of probable cause and, thus, the *Aguilar* first "prong," the Court cited *Draper v. United States,* 358 *U. S.* 307, 79 *S. Ct.* 329, 3 *L. Ed. 2d* 327 (1959) which it referred to as a "suitable benchmark." 393 *U. S.* at 416, 89 S. Ct. at 589, 21 *L. Ed. 2d* at 644. There was no arrest or search warrant in *Draper*.[4] While the Government's informant in that case, with whom the police had had satisfactory experience, did not state the way in which he had obtained his information, he reported that Draper had gone to Chicago the day before by train and that he would return to Denver by train with three ounces of heroin

---

[4] The Court in *Spinelli* in a footnote said:

While *Draper* involved the question whether the police had probable cause for an arrest without a warrant, the analysis required for an answer to this question is basically similar to that demanded of a magistrate when he considers whether a search warrant should issue. 393 *U. S.* at 417, 89 S. Ct. at 589, 21 *L. Ed. 2d* at 644, n. 5.

on one of two specified mornings. The informant also described with minute particularity the clothes that Draper would be wearing upon his arrival at the Denver station.

The Court in *Draper* made its determination of whether the authorities had probable cause to arrest and search Draper after considering not only the informant's detailed description, but also police surveillance which corroborated that description. However, the *Spinelli* Court, in utilizing *Draper* as an example of sufficient detail upon which a magistrate could find that the information was reliable, was concerned only with those facts which could have been presented to a magistrate and not the corroboration by the police. Justice Harlan wrote for the Court that, "[a] magistrate, when confronted with such detail, could reasonably infer that an informant had gained his information in a reliable way." 393 *U. S.* at 417, 89 *S. Ct.* at 589, 21 *L. Ed. 2d* 644.

 In the present case, we think the information contained in the informant's tip is of such a detailed nature that it could reasonably lead a magistrate to infer that the informant had probably observed the items himself which he knew to be stolen, or had gained his information in a reliable way. *Spinelli* regarded as sufficient the detail in *Draper* which described the clothing the suspect would be wearing and that he would arrive on a specified train. In the present case the informant described certain property and its location. In both cases the informant set forth details which probably only one conversant with the criminal activity would know. We think the detailed description in this case, though different from that in *Draper,* is of the type which the *Spinelli* Court regarded as sufficient to establish that the information was obtained in a reliable way. Here the informant's tip sets forth that "monies, jewelry, doctor's bag and Narcotcis (barbititates [sic] and narcotic paraphernalia)" taken during assaults, robberies and larcenies were located in a third floor apartment of a three family house at a specific address. While information concerning one, or

even two, of these items could have been obtained from an off-hand remark heard at a neighborhood bar or a rumor circulating in the underworld, the magistrate, in the present case, could well have believed, based on common experience, when the several items described are so diversified, and include among them such an unusual article as a doctor's bag, and their location particularized, that the informant knew from personal knowledge what he was talking about. *Cf. People v. Hamilton,* 71 *Cal.* 2d 176, 77 *Cal. Rptr.* 785, 454 *P. 2d* 681 (Sup. Ct. 1969). It is arguable that the informant obtained this information from an unreliable source, but it is more likely that the informant himself knew the facts, for the detailed information reported is not usually the subject of casual conversation. See the remarks of Justice White, concurring in *Spinelli, supra.*[5] Moreover, a reviewing court should pay substantial deference to the issuing court's finding of probable cause. *State v. Kasabucki,* 52 *N. J.* 110, 120 (1968). And even assuming that

---

[5]Justice White said:

I am inclined to agree with the majority that there are limited special circumstances in which an "honest" informant's report, if sufficiently detailed, will in effect verify itself — that is, the magistrate when confronted with such detail could reasonably infer that the informant had gained his information in a reliable way. See ante, at 417, 89 S. Ct. at 589, 21 L. Ed. 2d 644. Detailed information may sometimes imply that the informant himself has observed the facts. Suppose an informant with whom an officer has had satisfactory experience states that there is gambling equipment in the living room of a specified apartment and describes in detail not only the equipment itself but also the appointments and furnishings in the apartment. Detail like this, if true at all, must rest on personal observation either of the informant or of someone else. If the latter, we know nothing of the third person's honesty or sources; he may be making a wholly false report. But it is arguable that on these facts it was the informant himself who has perceived the facts, for the information reported is not usually the subject of casual, day-to-day conversation. Because the informant is honest and it is probable that he has viewed the facts, there is probable cause for the issuance of a warrant. 393 *U. S.* at 425–426, 89 S. Ct. at 593, 594, 21 *L. Ed.* 2d at 649.

the validity of the affidavit here is in doubt, "the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *United States v. Ventresca,* 380 *U. S.* 102, 109, 85 *S. Ct.* 741, 13 *L. Ed.* 2d 684, 698 (1965).

Since the affidavit showed that the unnamed informant was known to be trustworthy and the information he gave the police was of the sort which in common experience may be recognized as having been obtained in a reliable way, we hold that probable cause was established that the defendant was the possessor of stolen goods.

When this Court granted the State's petition for certification we requested counsel to spell out the significance of the reference in the affidavit to CC No. 15720 and 15721. Thereafter, Detective Wioland filed an affidavit with this Court in which he stated that those numbers referred to written reports filed at the Newark Police Department.[6] Those reports described assaults by a band of teenage boys upon two men in Newark in which money was taken from one. However, those reports did not disclose a theft of a doctor's bag, jewelry or narcotics. Detective Wioland said that it was his intent in referring to the reports to indicate that those crimes were perpetrated by the same boys who were working for Perry and bringing property they had stolen to him.

The defendant contends that the affidavit submitted to this Court by Detective Wioland shows that the supporting affidavit of the detective for the issuance of the warrant contained a false material statement, *i. e.,* that all the items mentioned in that affidavit were the fruit of the Newark crimes reported in CC No. 15720 and 15721, whereas in truth only money and not the doctor's bag, etc., was taken. We need not decide the question of whether the sufficiency

---

[6] Of course, we cannot utilize this affidavit to supply further information in the affiant's possession which he did not transmit to the issuing judge. *State v. Macri,* 39 *N. J.* 250, 262 (1963).

of an affidavit can be challenged by contesting the truth of the recitals therein. See *State v. Rulli,* 116 *N. J. Super.* 120 (App. Div. 1971). The detective's affidavit submitted to this Court might be viewed at first blush as impairing the corroboration in the original affidavit of the informant's tip in that one could believe upon a reading of that affidavit that all the items were taken in the reported Newark crimes. On the other hand, one could just as well believe that the references to the Newark crimes furnished corroboration in that they were but two of a series of robberies and larcenies committed by the same culprits. Therefore, we do not have the problem of falsity in the first affidavit. In any event, we do not think the inclusion of CC No. 15720 and 15721 materially affected a showing of probable cause. As we have said earlier in this opinion, the tip contained diversified detail from a reliable informant which was sufficient in itself for the issuance of the search warrant.

We hold that the affidavit upon which the warrant was issued was constitutionally sufficient. Our holding makes it unnecessary to pass upon the State's other contentions.

The judgment of the Appellate Division is reversed and the judgment of conviction in the County Court is reinstated.

*For reversal*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, SCHETTINO and MOUNTAIN—6.

*For affirmance*—None.