<div style="border:1px solid black; padding:10px;">

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

</div>

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2564-16T2

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

KAREEM A. HARRIS and
JEAN A. ST. FLEUR, a/k/a
JAMES HALL, and FABIAN
C. WALKER,

      Defendants-Appellants,

and

MILO ST. FLEUR,

      Defendant.

_____

Submitted September 6, 2018 – Decided January 14, 2019

Before Judges Rothstadt and DeAlmeida.

On appeal from Superior Court of New Jersey, Law Division, Union County, Indictment Nos. 15-05-0389 and 15-10-0650.

Alan D. Bowman, attorney for appellants.

Michael A. Monahan, Acting Union County Prosecutor, attorney for respondent (Alexandra L. Pecora, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

DeALMEIDA, J.A.D.

Defendants Kareem A. Harris and Jean A. St. Fleur appeal from the August 15, 2016 order of the Law Division denying their motion to suppress evidence obtained during execution of a search warrant. We affirm.

I.

The following facts are derived from the record. In December 2014, a confidential informant (CI) gave Roselle Police Department (RPD) Detective Matthew Jakubowski information about drug sales in the community. The CI had previously provided members of the RPD with information leading to four arrests and the recovery of controlled dangerous substances (CDS). Jakubowski worked for RPD for twenty-one years, thirteen of which he served as a detective. The CI told Jakubowski that an African-American male, known to the CI as Kareem Harris, had been selling marijuana from his home in Roselle since July 2014. The CI described Harris as being approximately twenty-four years old, five feet, six inches tall, with a medium build, facial hair, and long black braids. The CI provided the specific address at which the sales took place. In addition,

the CI informed the detective that Harris sold marijuana from his vehicle, which the CI described as a 2008 BMW with a New Jersey registration the CI provided in detail. When shown a photograph of Harris from New Jersey Motor Vehicle Commission (MVC) records, the CI positively identified him as the person who he knew to be selling marijuana from his home and his vehicle. In addition, the physical description given by the CI was corroborated.

According to the records of the RPD and the MVC, Harris had, since 2002, maintained a residence on the first floor of the house at the address provided by the CI. Municipal tax records classified the building as a two-family rental home, owned by Harris's step-father, St. Fleur. An unrelated person occupied the second floor of the house. MVC records showed that the vehicle identified by the CI was registered to Harris's mother, Miloe St. Fleur, and was co-owned by Harris and his mother.

Based on this information, Jakubowski arranged for three controlled buys between Harris and the CI during December 2014 and January 2015. The first transaction took place on the front steps of Harris's home. The subsequent two buys occurred in other locations in Roselle with the exchanges taking place from Harris's BMW. On all three occasions, the CI called Harris in the presence of Jakubowski to arrange the sale. Prior to each transaction, RPD officers met the

CI, searched the CI for contraband, and supplied the CI with money for the purchase. In addition, the officers maintained surveillance of the CI as each transaction took place. Following each sale, the CI turned over substances that tested positive for marijuana.

On January 20, 2015, the trial court issued a search warrant for the first floor of the building where Harris resided, and for Harris's person, and car. It did so after reviewing the detective's affidavit detailing the above-described information, as well as Harris's five prior arrests on drug-related charges, and the prior issuance of a search warrant for Harris's home in a drug-related investigation.

Police executed the warrant on January 22, 2015. Officers conducted a motor vehicle stop of Harris after observing him leave his house. A search of his person and car did not reveal CDS. Officers cuffed Harris for their safety, and used his house keys to enter the home after they knocked and announced their presence. Three juveniles in the living room were patted down for weapons. After hearing noises emanating from the basement, officers proceeded down the stairs and encountered St. Fleur. They ordered St. Fleur to the ground and handcuffed him. A search incident to St. Fleur's arrest revealed a knotted, clear-plastic bag containing marijuana.

A-2564-16T2

A subsequent search of the basement recovered heroin and cocaine in bulk and packaged form, numerous Ziploc bags and rubber bands, ink pads and stamps, kitchen utensils with CDS residue, glass vials with caps, plastic bags containing marijuana, a digital scale, and a legal notice addressed to Harris. Officers searched the bedroom used by St. Fleur and recovered various-sized bags and jars containing marijuana, a knotted bag of heroin, glassine envelopes containing heroin, a glass plate covered in heroin, a box containing glassine envelopes stamped "Daily News," a loaded Rossi .357 magnum revolver, $4146 in United States currency, and mail addressed to St. Fleur and Miloe St. Fleur.

On October 8, 2015, a grand jury issued an indictment charging both defendants with first-degree maintaining/operating a CDS production facility, N.J.S.A. 2C:35-4; third-degree possession of heroin, N.J.S.A. 2C:35-10(a)(1); fourth-degree possession of marijuana in a quantity over fifty grams, N.J.S.A. 2C:35-10(a)(3); second-degree possession of heroin with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(2); third-degree possession of marijuana in a quantity of one ounce or more with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(11); third-degree possession of one or more ounces of marijuana within 1000 feet of a school, N.J.S.A. 2C:35-7; and

second-degree possession of marijuana with intent to distribute within 500 feet of a public park, N.J.S.A. 2C:35-7.1.

In addition, St. Fleur was charged with second-degree possession of a firearm during the commission of a CDS offense, N.J.S.A. 2C:39-4.1(a); and fourth-degree possession of hollow-nose bullets, N.J.S.A. 2C:39-3(f). In a separate indictment, St. Fleur was charged with second-degree possession of a weapon by certain persons, N.J.S.A. 2C:39-7.

Defendants filed a motion to suppress the evidence seized during execution of the search warrant, arguing that the warrant was issued without probable cause. They contended that the information the CI provided to Jakubowski was uncorroborated hearsay. In addition, defendants argued that because police did not record the telephone conversations between the CI and Harris, or the three CDS sales, they were entitled to an evidentiary hearing to test the veracity of the affidavit on which the warrant was issued. Defendants also argued that the affidavit lacked particularity, and misrepresented Harris's background, and the nature of the dwelling.

In addition, defendants argued that the officers exceeded the scope of the warrant when they entered parts of the home not occupied exclusively by Harris. They noted that Harris was the only occupant of the home whose conduct formed

A-2564-16T2

the basis of the affidavit on which the warrant was based. According to defendants, the State was aware that Harris occupied a limited space in the residence, which was primarily occupied by his mother, step-father, and siblings. Thus, they argued, the warrant should not have permitted officers to search the entirety of the first-floor residence or to enter the basement.

The trial court denied the motion in a written decision and order issued on August 15, 2016. The court concluded that defendants merely asserted that Jakubowski's affidavit was "woefully lacking and conclusory," but produced no evidence that any of the information contained in the affidavit was false. Thus, the court concluded, defendants did not meet their burden of making a substantial preliminary showing of falsity, based on a deliberate falsehood or reckless disregard for the truth, necessary to warrant an evidentiary hearing. See State v. Howery, 80 N.J. 563, 567 (citing Franks v. Delaware, 438 U.S. 154, 170-71 (1979)). The court described defendants' arguments as "simply an[] expression of a desire to cross-examine" Jakubowski, which does not constitute a disputed material fact warranting his testimony. See R. 3:5-7(c).

With respect to defendants' probable cause argument, the court held:

> At the time of the application, the State had more than enough information to justify the seeking and issuance of the warrant for defendant Harris, his vehicle and home. Here, there was information relayed from a

confidential informant, who had a proven veracity, and verified by police investigation through controlled purchases and surveillance. Contrary to the defendant[s]' assertion, this was not simply conclusory information. Detective Jakubowski sets out clearly the basis for his belief that there is probable cause, specifically, due to the C.I.'s tip, three controlled purchases and police corroboration. The information presented amounted to probable cause.

In addition, the trial court found that the search warrant was sufficiently particular in its description of the place to be searched. The court noted that individual living units in a multi-unit dwelling are to be treated as separate residences for purposes of the Fourth Amendment's warrant requirement. Yet, relying on our holdings in State v. Sheehan, 217 N.J. Super. 20, 29-30 (App. Div. 1987), and State v. Schumann, 156 N.J. Super. 563 (App. Div. 1978), the trial court held that in the absence of evidence that a particular room or rooms in an individual living unit are exclusively occupied by the subject of the warrant, the entire living unit may be searched, even when shared by unrelated persons. The court found no support in the record for defendants' proposition that the State knew or should have known that Harris occupied and had access to only one room in the dwelling he shared with his family. The court noted that the police investigation revealed that Harris lived on the first floor of what was identified as a two-family home, not a boarding house or apartment building,

and that the warrant appropriately excluded the second floor of the dwelling, which was occupied by an unrelated tenant in a separate living unit.

On October 3, 2016, St. Fleur entered a negotiated guilty plea to third-degree possession of one or more ounces of marijuana within 1000 feet of a school, N.J.S.A. 2C:35-7, and second-degree possession of a weapon by certain persons, N.J.S.A. 2C:39-7. The same day, Harris entered a negotiated guilty plea to second-degree possession of heroin with intent to distribute, N.J.S.A. 2C:35-5(a)(1). Defendants reserved their right to appeal the trial court's denial of their motion to suppress.

On January 6, 2017, the court sentenced St. Fleur to a five-year period of incarceration with a thirty-month period of parole ineligibility on the marijuana possession conviction, and a concurrent five-year period of incarceration with a five-year period of parole ineligibility on the weapons possession conviction. The court dismissed the remaining counts against St. Fleur. The court sentenced Harris to a six-year term of imprisonment with a thirty-six-month period of parole ineligibility on the heroin possession conviction. The court dismissed the remaining charges against Harris. The court imposed fines and penalties against defendants, and ordered the $4146 forfeited.

This appeal followed. Defendants raise the following arguments:

A-2564-16T2

POINT I

THE AFFIDAVIT DOES NOT CONTAIN SUFFICIENT PROBABLE CAUSE TO UNDERPIN INSSUANCE OF A SEARCH WARRANT FOR THE ENTIRETY OF APPELLANTS' DOMICILE.

POINT II

THE EVIDENCE MUST BE SUPPRESSED.

POINT III

MOVANT (SIC) WAS ABSOLUTELY ENTITLED TO A HEARING.

## II.

The Fourth Amendment, and Article I, Paragraph 7 of the New Jersey Constitution, protect "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV; N.J. Const. art. I, ¶ 7. "[P]hysical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." Payton v. New York, 445 U.S. 573, 585 (1980) (quoting United States v. United States Dist. Court, 407 U.S. 297, 313 (1972)). "Under our constitutional jurisprudence, when it is practicable to do so, the police are generally required to secure a warrant before conducting a search" of a residence. State v. Hathaway, 222 N.J. 453, 468 (2015).

10

A warrant to conduct a search will not be issued except "upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons and things to be seized." U.S. Const. amend. IV; accord N.J. Const., art. I, ¶ 7; State v. Smith, 212 N.J. 365, 387 (2012). A warrant will issue when a "court is satisfied that there is probable cause to believe that . . . evidence of a crime is at the place sought to be searched." Smith, 212 N.J. at 388 (internal quotations and citations omitted). "The issuing court is required only to make a practical and realistic evaluation of the information presented on the issue of probable cause." State v. Chippero, 201 N.J. 14, 32 (2009) (citing State v. Kasabucki, 52 N.J. 110, 117 (1968)).

Probable cause is no more than a well-grounded suspicion or belief of guilt, or a fair probability that an offense has been committed. State v. Moskal, 246 N.J. Super. 12, 21 (App. Div. 1991); State v. Johnson, 171 N.J. 192, 214-15 (2002). It requires "something less than the proof needed to convict and something more than a raw, unsupported suspicion." Moskal, 246 N.J. Super. at 21. "Probable cause exists when, considering the totality of the circumstances, a person of reasonable caution would be justified in believing that evidence of a crime exists in a certain location." Smith, 212 N.J. at 388 (internal quotations and citation omitted).

11

When reviewing a challenge to the sufficiency of a warrant, the reviewing court must accord "substantial deference to the discretionary determination resulting in the issuance of the [search] warrant." State v. Sullivan, 169 N.J. 204, 211-12 (2001) (alternation in original) (citing State v. Marshall, 123 N.J. 1, 72 (1991)). "[A]n appellate court reviewing a motion to suppress must uphold the factual findings underlying the trial court's decision so long as those findings are supported by sufficient credible evidence in the record." State v. Elders, 192 N.J. 224, 243 (2007) (quotations omitted). We disregard only those findings that "are clearly mistaken." State v. Hubbard, 222 N.J. 249, 262 (2015).

A warrant is "presumed to be valid, and defendant bears the burden of demonstrating that the warrant was issued without probable cause or that the search was otherwise unreasonable." Chippero, 201 N.J. at 26 (quoting State v. Evers, 175 N.J. 355, 381 (2003)). "[T]he resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." State v Perry, 59 N.J. 383, 394 (1971) (quotations omitted).

Our careful review of the record reveals ample evidence supporting the trial court's determination that the search warrant was based on probable cause. As the trial court found, a CI with an established history of reliability informed Jakubowski that Harris had been selling marijuana from his home and vehicle

12

for several months.  The CI provided detailed information, including a specific address, vehicle make, license plate number, and physical description of the person the CI knew to be Harris.  The detective corroborated all of that information through an investigation, including confirming that the address was Harris's home, owned by his step-father.

It has long been established that information provided by a CI, including hearsay statements, may form the basis for probable cause, provided there is a substantial basis for crediting the information.  State v. Smith, 155 N.J. 83, 92 (1998).  The reliability of an informant's information is determined under the totality of the circumstances.  State v. Novembrino, 105 N.J. 95, 122 (1987); Illinois v. Gates, 462 U.S. 213, 238 (1983).  The court must consider "all relevant circumstances" in its analysis, including the basis for the informant's knowledge.  Smith, 155 N.J. at 92.

Past instances of an informant's reliability are "probative of veracity."  Id. at 94; see also Novembrino, 105 N.J. at 123.  In addition, police may establish an informant's veracity through corroboration from an independent investigation.  State v. Rodriguez, 172 N.J. 117, 127-28 (2002); State v. Zutic, 155 N.J. 103, 111 (1998).  This is precisely what took place here.  RPD officers arranged for the CI to purchase CDS from Harris through three controlled

13

transactions. Harris sold CDS to the CI, while under surveillance by officers, once from the front porch of his home, and twice from the vehicle identified by the CI. These transactions confirmed the accuracy of the CI's information and pointed directly to Harris's home and vehicle as likely locations of evidence of his criminal activity.

Nor are we persuaded by defendants' argument that the trial court erred in not holding an evidentiary hearing on their motion to suppress. Although defendants challenged the veracity of the information supporting the warrant, they proffered no evidence that Jakubowski's affidavit was false, let alone knowingly, intentionally or recklessly false. See Franks, 438 U.S. at 155-56; Howery, 80 N.J. at 568. We agree with the trial court's conclusion that defendants' desire to cross-examine Jakubowski, standing alone, is not a sufficient basis for a Franks hearing.

We find no merit in defendants' argument that the trial court mistakenly concluded that the warrant was sufficiently particular in its description of the place to be searched. The constitutional protections against search and seizure do not require "pin-point precision" in the warrant's scope. State v. Marshall, 398 N.J. Super. 92, 106 (App. Div. 2008) (quotations omitted). Here, the warrant provided the address of Harris's home, and limited the search to the first-

floor premises he occupied. Defendants offered no evidence that officers were aware that Harris occupied only one room of the residence.

Nor have defendants established, as they argue, that further efforts by the officers to corroborate the CI's information would have led the officers to conclude that Harris occupied a single room in the residence. They point to no evidence that would have been uncovered by the officers establishing the farfetched proposition that Harris was permitted only to occupy his bedroom, and was barred from using the bathroom, kitchen, living room, basement and other facets of a home he shared with his mother, step-father, and siblings.

Finally, defendants' argument that the information supporting the detective's affidavit was stale because the affidavit was signed eight days after the last of the three controlled buys is unconvincing. The officers were informed that Harris had been selling CDS from his home and car for several months. They arranged for sales of marijuana from Harris to the CI on three occasions in an approximately one-month period. Nothing during the investigation suggested that Harris was preparing to depart from his home, or intended to curtail his ongoing drug distribution operation. An eight-day gap between Harris's final sale of CDS and the execution of the detective's affidavit is

insufficient to render the information in the affidavit stale, absent convincing evidence to the contrary.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2564-16T2