**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3139-21
A-3230-21

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

A.R.,

    Defendant-Appellant.

_____

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

M.V.,

    Defendant-Appellant.

_____

Submitted October 17, 2023 – Decided November 27, 2023

Before Judges Whipple and Enright.

On appeal from the Superior Court of New Jersey, Law Division, Somerset County, Indictment Nos. 19-08-0492 and 21-08-0615.

Chamlin Uliano & Walsh, attorneys for appellant A.R. (Charles J. Uliano, of counsel and on the briefs; Andrew T. Walsh, on the briefs).

Joseph E. Krakora, Public Defender attorney for appellant M.V. (Daniel Rockoff, Assistant Deputy Public Defender, of counsel and on the brief).

John P. McDonald, Somerset County Prosecutor, attorney for respondent (Gerard J. Tyrrell, Assistant Prosecutor, and Caitlin A. Davis, Assistant Prosecutor, of counsel and on the briefs).

PER CURIAM

In these back-to-back appeals, defendants A.R.[1] and M.V. appeal from their judgments of conviction after entering pleas and retaining the right to challenge the denial of suppression motions concerning the seizure of cell phones pursuant to a warrant. We affirm the judgment of conviction as to A.R., and we remand for further findings consistent with this opinion as to the factual underpinnings of the search of M.V.

On January 26, 2019, the New Jersey Division of Child Protection and Permanency (Division) received an anonymous referral that a seven-year-old

---

[1] We utilize the parties' initials pursuant to Rule 1:38-3(c)(9).

child, S.V., was being endangered at a residence in Franklin Township. The following day, Division caseworkers visited the residence and interviewed S.V. Later that same week, Detective Iris Reyes of the Somerset County Prosecutor's Office (SCPO) interviewed S.V. at school. During this latter interview, S.V. disclosed she had been sexually abused by two of the residents, including M.V., and that S.V. had been compelled by another resident to transmit sexually explicit photographs using cell phones. On January 28, 2019, the SCPO applied for a search warrant; Det. Reyes appeared as the affiant.

The court found a "well-grounded reasonable suspicion that criminal activity has occurred at this residence," and issued the search warrant for the residence. The warrant permitted the search of the premises for, and seizure of,

> All electronic devices to include computers, cellular phones, tablets, cameras, video recording equipment and any devices associated with their use to include storage devices.
>
> All evidence related to pornographic sexual activity to include restraints, clothing, collars, hand-cuffs, whips, and the like.
>
> Any documentary evidence of paid pornographic sites.

To the trial judge's inquiry, Det. Reyes replied that the warrant was not being sought "to search any individual at [that] time."

3

That same day, detectives from the SCPO arrived at the residence to execute the search warrant. Once Det. Reyes advised them by phone that the warrant was issued, the detectives approached the house; a co-defendant exited the residence and greeted the detectives outside the front door. That co-defendant was detained outside the residence, while the detectives entered the residence and escorted A.R. and another co-defendant outside. Shortly thereafter—but before Det. Reyes arrived at the residence with the search warrant—M.V. returned to the residence; upon her arrival outside, her cell phone was seized. At the conclusion of the search warrant, all items of evidential value were brought back to the SCPO where they were secured and later entered into evidence.

On February 26, 2019, the SCPO applied for, and received, Communications Data Warrants for the electronic devices seized during the January 28, 2019 search, as well as Twitter and other online accounts associated with appellants and their co-defendants. On May 29, 2019, appellants and their co-defendants were arrested. On August 21, 2019, the Grand Jury returned an indictment that was later superseded, leveling numerous charges against both appellants and their co-defendants. A.R., M.V. and their co-defendants filed motions to suppress which were denied on July 22, 2021.

M.V. was charged with human trafficking, N.J.S.A. 2C:13-8(a)(3); aggravated sexual assault, N.J.S.A. 2C:14-2(a)(1); numerous counts of endangering, N.J.S.A. 2C:24-4(b)(3), 2C:24-4(a)(1) and (2) and 2C:24-4(b)(5)(b)(iii); various related conspiracy counts, N.J.S.A. 2C:5-2(a)(1); as well as weapons offenses, N.J.S.A. 2C:39-3(j); and false swearing N.J.S.A. 2C:28-2(a).

A.R. was similarly charged with human trafficking, aggravated sexual assault, and various conspiracy counts, as well as counts of endangering, N.J.S.A. 2C:24-4(b)(3) and 2C:24-4(b)(5)(b)(iii).

On November 6, 2021, both defendants pled guilty to amended conspiracy charges and reserved their right to appeal the denial of the motion to suppress. Both were sentenced to twenty-five years in New Jersey State Prison, with twenty-five years of parole ineligibility, parole supervision for life, and mandatory minimum fines and penalties.

This appeal followed as to the denial of defendants' motions to suppress.

M.V. raises the following arguments:

> POINT I:
> THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION TO SUPPRESS A CELL PHONE SEIZED BY POLICE FROM HER PERSON WITHOUT A WARRANT OR ANY EXCEPTION TO THE WARRANT REQUIREMENT.

A-3139-21

A. The trial court erred by finding that the search warrant for the residence authorized the seizure of the defendant's phone outside of the residence.

B. The trial court erred by finding that the search warrant for the residence authorized the detention of the defendant.

C. The State failed to meet its burden of proving that the plain view exception to the warrant requirement applied.

A.R. raises the following arguments:

POINT I:
THE SEARCH AND SEIZURE WERE ILLEGAL.

A. [A.R.] was not a target of the search.

B. The search and seizure of appellant's property exceeded the scope of the warrant.

C. [A.R.] is entitled to an expectation of privacy in her home.

We review the issuance of search warrants with "substantial deference to the issuing court's finding of probable cause." State v. Chippero, 201 N.J. 14, 33 (2009) (quoting State v. Perry, 59 N.J. 383, 393 (1971)). "When the adequacy of the facts offered to show probable cause is challenged after a search made pursuant to a warrant, and their adequacy appears to be marginal, the doubt

should ordinarily be resolved by sustaining the search." Simmons v. Loose, 418 N.J. Super. 206, 224 (App. Div. 2011).

When reviewing a denial of a motion to suppress, we "must uphold the factual findings underlying the trial court's decision so long as those findings are supported by sufficient credible evidence in the record." State v. Lamb, 218 N.J. 300, 313 (2014). Factual findings "should be overturned only if they are so clearly mistaken that the interests of justice demand intervention and correction." State v. Boone, 232 N.J. 417, 426 (2017) (citations omitted). Legal interpretations are owed no deference and are, instead, reviewed de novo. State v. Robinson, 228 N.J. 529, 534 (2017).

Both defendants challenge the seizure of their devices during the execution of a search warrant at the residence on January 28, 2019, and seek to suppress evidence garnered from their devices. Only A.R. argues the search warrant executed at the residence was not valid on its face, while both defendants assert the scope of the warrant did not extend to the particular circumstances surrounding the seizure of their respective devices.

The United States and New Jersey Constitutions require searches and seizures of private property be conducted with sufficient legal safeguards to protect individuals from "unreasonable searches and seizures" carried out by

A-3139-21

government officials. U.S. Const. amend. IV; N.J. Const. art. I, ¶ 7. In deciding whether to issue a warrant, a court must determine whether probable cause exists "based on the information contained within the four corners of the supporting affidavit, as supplemented by sworn testimony before the issuing judge that is recorded contemporaneously." State v. Bivins (II), 226 N.J. 1, 11 (2016) (citations omitted).

To protect individuals' rights search warrants must "describe with particularity the places subject to search and people or things subject to seizure." State v. Andrews, 243 N.J. 447, 464 (2020). "[A] search executed pursuant to a warrant is presumed to be valid and . . . a defendant challenging its validity has the burden to prove 'that there was no probable cause supporting the issuance of the warrant or that the search was otherwise unreasonable.'" State v. Keyes, 184 N.J. 541, 554 (2005) (quoting State v. Jones, 179 N.J. 377, 388 (2004)). On the other hand, if the search or seizure exceeds the scope of the warrant, it is considered warrantless, and the State then "bears the burden of proving by a preponderance of the evidence the validity of a warrantless search" by showing that it satisfies the elements of "one of the few specifically established and well-delineated [warrant] exceptions." State v. Edmonds, 211 N.J. 117, 128-30 (2012).

To determine whether a search or seizure falls within the scope of a given warrant, a court must examine "the terms of the search warrant," and those terms "must be strictly respected." State v. Bivins (I), 435 N.J. Super. 519, 524 (App. Div. 2014), aff'd, 226 N.J. 1 (2016). In three separate locations on the warrant, it authorized a premises search, as opposed to a search of either a person or a vehicle. It then provided a "description of the premises to be searched"—"[the residence]. The residence is described as an[] end-unit of attached housing (townhouse style) with front door at ground level with house number positioned near the drain pipe adjacent to the steps leading to the door."

The terms on the face of this warrant describe with particularity the items sought and subject to seizure, as well as the premises wherein those items may be sought. The trial court declined to authorize a search of either persons or vehicles, electing not to mark any of the three locations on the warrant that could have indicated such an expanded scope. The scope of the warrant is facially clear: the residence may be searched for the items described but persons and vehicles may not.

M.V. arrived at the residence after her co-defendants had vacated the residence and before Det. Reyes arrived on site with the search warrant. While M.V. was outside, her phone was taken by an SCPO detective and was later

marked as evidence. The only accounts of this interaction in the record come from the "Supplemental Reports" filed by two detectives who were present at the time. One detective's report indicates:

> [w]hile waiting for Det. Reyes to arrive at the residence with the search warrant, [M.V.] arrived at the residence. I then seized a white Apple [iPhone], model A1522 from [M.V.]. The item was later labeled as [evidence]. Upon the arrival of Det. Reyes[,] it was determined that she would transport all of the [co-defendants] with the assistance of [another detective] to the Franklin Police Department to be interviewed.

The other detective's report records that "[w]hile waiting outside, [M.V.] arrived and shortly thereafter, Det. Reyes arrived with the search warrant. All the aforementioned residents of [the residence] went to the Franklin Township Police Department to be interviewed." There is no independent account from M.V. in the record.

M.V. argues law enforcement officers were not justified in detaining her outside the residence while the search was conducted inside and that her presence did not satisfy any of the three factors described in Michigan v. Summers as justifying her detention during the search. 452 U.S. 692, 705 (1981). She avers the authority conferred by Summers was circumscribed by Bailey v. United States to further limit when such detention by officials is permissible. 568 U.S. 186, 199–201 (2013). The trial court found Summers

applied because M.V. was present when the search was taking place, but never addressed the limitations Bailey subsequently placed on the brief detention authority described in Summers or whether those limitations applied to M.V.'s arriving at the premises before the search warrant was executed.

In Summers, the United States Supreme Court considered whether the "limited intrusion" of a detention during a search authorized by a warrant for contraband was justified and determined that "both the law enforcement interest and the nature of the 'articulable facts' supporting the detention are relevant" to the analysis. 452 U.S. at 702. The Court then outlined three law enforcement interests advanced by such a temporary detention: (1) "minimizing the risk of harm to the officers" conducting the search; (2) facilitating the "orderly completion of the search"; and (3) "preventing flight in the event that incriminating evidence is found." Id. at 702–03. The Court emphasized that "[o]f prime importance in assessing the intrusion is the fact that the police had obtained a warrant to search [the premises] for contraband." Id. at 701. Thus, because "[a] neutral and detached magistrate had found probable cause to believe that the law was being violated in that house and had authorized a substantial invasion of the privacy of the persons who resided there," the "less intrusive" temporary detention was permissible. Ibid. Notably, the Court

declined to determine "whether the same result would be justified if the search warrant merely authorized a search for evidence," as in this case, instead of a search for contraband. Id. at 705, n.20.

In Bailey, the Supreme Court held the authority to detain an occupant of the premises being searched pursuant to a warrant for contraband had a spatial constraint, such that it was "necessary to confine the Summers rule [permitting temporary detention] to those who are present when and where the search is being conducted." 568 U.S. at 197. The Court held the "categorical authority to detain incident to the execution of a search warrant must be limited to the immediate vicinity of the premises to be searched." Id. at 199. Further, "[l]imiting the rule in Summers to the area in which an occupant poses a real threat to the safe and efficient execution of a search warrant ensures that the scope of the detention incident to a search is confined to its underlying justification." Id. at 201. Although the Bailey Court did not need to precisely define "immediate vicinity," it encouraged courts "[i]n closer cases," to carefully look at the facts to determine whether an occupant's specific location justified temporary detention during a premises search. Ibid. Courts should "consider a number of factors . . . including the lawful limits of the premises, whether the

occupant was within the line of sight of his dwelling, the ease of reentry from the occupant's location, and other relevant factors."  Ibid.

Thus, we must necessarily understand the scope and location of a purported detention to determine whether that detention was legal.  Bailey, 568 U.S. at 193 ("[D]etention incident to the execution of a search warrant" is permitted when "the character of the additional intrusion caused by detention is slight and [when] the justifications for detention are substantial.").  Further, the Bailey Court emphasized limiting the authority to detain occupants is necessary when "the search-related law enforcement interests are diminished and the intrusiveness of the detention is more severe."  Id. at 201.

In addition to those general guidelines, the Bailey Court posed a specific scenario that, though dicta, proves instructive here.  The Court considered the possibility of an occupant's "return[ing] to the premises at some point . . . [maybe even] when the officers are still conducting the search."  Id. at 195.  In that situation, "[o]fficers can and do mitigate that risk [of a returning occupant disrupting the search] by taking routine precautions, for instance by erecting barricades or posting someone on the perimeter or at the door."  Ibid.  The Bailey Court thus intended to distinguish between detention of an occupant and merely

13

preventing that occupant—or any other unauthorized person—from accessing the premises during a search.

Here, nothing about M.V.'s purported "detention" is clear. Under Summers, Bailey, and Bivins, the term "detention" suggests that the detained occupant is prevented from either leaving or entering the premises. See Summers, 452 U.S. at 696; Bailey, 568 U.S. at 191; Bivins (II), 226 N.J. at 5. Based on our review of this record, however, we cannot discern precisely where this "detention" took place or whether officials compelled M.V. to remain or move anywhere. The record only implies she was prevented from entering the residence, similarly to the co-defendants who were removed from inside. The record is, therefore, unclear as to whether M.V. was detained at all.[2]

Before considering the seizure of M.V.'s cell phone, we need to know whether M.V. was searched prior to the seizure of her phone. The record lacks enough information to fully resolve this issue. If M.V. was not searched, then

---

[2] If M.V. was not detained prior to the seizure of her cell phone, then her argument the detention was illegal is moot. If, on the other hand, M.V. was detained prior to the seizure of her cell phone, there is insufficient information in the record to determine the extent of the detention and whether it was justified when balanced against a fact-specific analysis of the Summers factors. Ultimately, this issue may not even need to be resolved, because the final question of the legality of the seizure of M.V.'s cell phone may be determinative.

her phone must have been visible when it was seized—but it may or may not have been legally seized pursuant to the plain view doctrine. On the other hand, if M.V. was searched within the scope of the warrant, then the analysis may proceed to the seizure. If M.V.'s search exceeded the scope of the warrant, then the phone was necessarily illegally seized and could be excluded as "fruit of the poisonous tree." See State v. Roman-Rosado, 462 N.J. Super. 183, 197 (App. Div. 2020).

The interaction between M.V. and law enforcement officials outside the residence is only described in two brief excerpts from police reports. Neither affirmatively indicates whether M.V. was searched, or whether—as the State argues in the alternative—the phone was in plain view before it was seized.[3]

M.V. argues the seizure of her cell phone from her person when she arrived outside of the residence was beyond the scope of the search warrant because the warrant only permitted a search of, and seizure of property from, the premises. In support of her position, not only does M.V. rely on her presence outside the premises described with particularity in the warrant as "the premises

---

[3] If M.V. was searched, the scope of the premises warrant does not authorize the search of a person, and the search was illegal. If M.V. was not searched, and the phone was seized when it was in plain view, then the legality of the seizure hinges on the analysis under the plain view doctrine.

to be searched," but she also asserts the warrant only authorized a search of the premises and not of any person. Even if the warrant authorized the search of any person—which, she contends, it does not—the warrant does not describe her with the particularity that is required to avoid the slippery slope of "general warrants."

The motion court applied the United States Supreme Court's decision in Summers to deny both appellants' motions to suppress. The motion court acknowledged, but did not address, the fact that the warrant in this case did not specify that persons were to be searched. Instead, the motion court found that— unlike in Bivins, where the defendant did not know that a search was being conducted and was five or six houses away from the premises being searched— M.V. was present when the search was taking place.

The motion court credited the State's assertion the detectives' purported authority to detain M.V. outside—thereby preventing her from entering the residence—extended the authority granted by the search warrant to reach property that would have been in the residence, if only they had chosen to execute the search warrant at a time when M.V. was already inside.[4]

---

[4] Notably, even if M.V. was inside the residence and her phone was on her person, the search warrant would still not authorize the detectives to search, or seize property from, her person.

We disagree with this rationale because of the record before us.  As stated above, the scope of the warrant is facially clear:  officials may search the residence for the items described but may not search persons or vehicles.  Under the authority of the warrant, the detectives may not search M.V.'s person and are not authorized to seize property from her person, regardless of where that person is.  Any seizure from her person is warrantless and requires the State to demonstrate by a preponderance of the evidence that it satisfies the requirements of one of the warrant exceptions.  Edmonds, 211 N.J. at 128.

Any argument M.V. was subject to search because she was in the "immediate vicinity" of the premises is inapposite, because that is the parameter associated with the right to detain an occupant incident to a search warrant; it does not permit the search of the detained occupant as well.  See Bailey, 568 U.S. at 202.  Only a warrant that permits the search of particular persons can authorize the bodily search of an individual.

The warrant does not authorize the search of a person, whether that person is inside or outside the premises described in the warrant.  The only set of facts wherein the warrant would permit the legal seizure of M.V.'s cell phone is if the phone is readily visible (that is, in plain view and not necessitating a search of her person) and in or on the premises described in the warrant.  It seems clear,

however, M.V. (and her phone) were not "in or on the premises described in the warrant." The fact that the two detectives' reports state M.V.'s co-defendants were "escorted from the residence," or "escorted . . . outside," suggests the area where M.V. and her co-defendants were allowed to remain was sufficiently removed from the premises that they would not interfere with the search. M.V. was, therefore, in a location sufficiently outside the "premises to be searched" that the authority of the warrant would not reach her. The record thus suggests M.V.'s phone was outside the scope of the warrant when it was seized.

For the same reasons, we disagree with the State's argument that M.V.'s cell phone was legally seized pursuant to the plain view doctrine, regardless of whether the associated search and seizure were within the scope of the warrant. The motion court did not address this argument, finding instead that M.V.'s cell phone was lawfully seized pursuant to the search warrant and under the Summers rule.

Again, it is unclear from the record when, where, or whether any detective at the residence searched M.V. or whether her cell phone was in plain sight before it was seized.

Thus, we remand for further findings consistent with this opinion as to the factual underpinnings of the search of M.V.

A-3139-21

A.R.

The cell phone and computer belonging to A.R. were seized pursuant to the search warrant issued for the residence. Prior to the execution of the search warrant, detectives escorted A.R. and another co-defendant outside the residence, where they remained until they were escorted to the Franklin Township Police Department. A.R. argues because she was not "a target of the search" and "[t]here was no testimony whatsoever that suggested [A.R.] was involved in criminal acts with [S.V.]," the seizure of her electronic devices "was an impermissible intrusion upon [A.R.]'s expectation of privacy." We disagree.

The first consideration of any search and seizure inquiry is whether the subject was entitled to an expectation of privacy; without a reasonable expectation of privacy, "an individual is not entitled to protection under either the Fourth Amendment or Article I, Paragraph 7 of the New Jersey Constitution." State v. Taylor, 440 N.J. Super. 515, 522 (App. Div. 2015). Unlike the federal Constitution, the New Jersey Constitution requires only that an expectation of privacy be reasonable, not that the individual prove a subjective expectation of privacy. "Expectations of privacy are established by general social norms, and must align with the 'aims of a free and open society." Taylor, 440 N.J. Super. at 523 (internal quotation marks omitted). As such,

19                                                      A-3139-21

"constitutional protection against unlawful searches and seizures applies with maximum force to governmental intrusions into the home." State v. Ingram, 474 N.J. Super. 522, 535 (App. Div. 2023) (citing Florida v. Jardines, 569 U.S. 1, 6 (2013)).

The record demonstrates, at least at the time the search warrant was issued, officials had reason to believe A.R. lived at the residence and, thus, had a reasonable expectation of privacy on the premises. During the Division's first visit to the residence, A.R. had told an official that she lived there "with her father . . ., her fianceé . . ., and her sister." Establishing A.R.'s residence at the subject premises is only the first step in the search and seizure inquiry, though, and simply confirms that A.R. had a right to privacy at the residence.

A.R. argues, at the time that the search warrant was issued, S.V. had not implicated her in any way, S.V. had not said anything about being filmed or photographed by or for A.R., and there was no testimony, evidence, or statement to implicate A.R. with any criminal activity. A.R. asserts the expansive scope of the warrant was not justified by sufficient evidence to support probable cause. Further, she asserts the warrant had no concern or specificity as to the ownership or location of the devices, which permitted the State to search and seize A.R.'s property even though neither she nor her possessions were the subject of the

20

investigation or the objects of the search. She argues the expansive sweep far exceeded the State's justification for the search as only two of the five adult residents were implicated in the investigation and such a warrant is unsupported by probable cause and is unduly broad in its reach.

A.R. bears the burden of "demonstrating that the warrant was issued without probable cause or that the search was otherwise unreasonable." See State v. Evers, 175 N.J. 355, 381 (2003). She argues that testimony put forth in support of the warrant did not allege wrongdoing by her. This argument does little to advance A.R.'s cause, because there is no constitutional requirement for premises warrants to particularly set forth the individuals targeted by an investigation. Search warrants are not directed at persons; "they authorize the search of 'places' and the seizure of 'things,' and as a constitutional matter they need not even name the person from whom the things will be seized." Zurcher v. Stanford Daily, 436 U.S. 547, 553 (1978). Indeed, "[t]he critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." Id. at 556.

The testimony before the issuing court was clearly sufficient to support that court's finding a "well-grounded reasonable suspicion that criminal activity has occurred at this residence." We conclude the warrant was valid on its face and legally authorized a search of, and a seizure of property from, the premises described within. Under the record considered, A.R.'s cell phone and computer were legally seized pursuant to the search warrant executed at the residence on January 28, 2019.

Affirmed as to A.R.

Based on all the above, remanded as to M.V. for further fact-finding consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3139-21