**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1765-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

KARIM Y. RAZAK, a/k/a
KARIM RAZAK,

    Defendant-Appellant.

_____

Submitted April 23, 2024 – Decided May 10, 2024

Before Judges Perez Friscia and Torregrossa-O'Connor.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 21-07-0626.

Jennifer Nicole Sellitti, Public Defender, attorney for appellant (Alison Gifford, Assistant Deputy Public Defender, of counsel and on the brief).

Yolanda Ciccone, Middlesex County Prosecutor, attorney for respondent (Hudson Earl Knight, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Karim Y. Razak appeals from his January 25, 2023 judgment of conviction and the November 30, 2021 order denying the suppression of evidence seized pursuant to a search warrant. We affirm.

I.

During the evening of April 2, 2021, Woodbridge Township Police Department Special Investigations officers were conducting surveillance in unmarked police vehicles. Detective Matthew Dougherty and Officer Ferreira[1] observed Jason Milak and David Seniakevgch, both known to have arrests for controlled dangerous substance (CDS) offenses, in a black Mercedes. The officers followed the Mercedes to Marsh Street, witnessing Seniakevgch exit the vehicle and approach a West Avenue parking lot before briefly walking out of sight. Approximately five minutes later, a black Toyota RAV4 exited the parking lot, pulling alongside the Mercedes to drop Seniakevgch off.

Doughtery and Ferreira followed the Mercedes and conducted a motor vehicle stop after observing the vehicle fail to maintain its lane in violation of N.J.S.A 39:4-88. Upon questioning, Malik and Seniakevgch gave conflicting stories regarding their whereabouts prior to the stop, which also conflicted with

---

[1] We use only the officers' last names when their first names were not included in the record.

the officers' observations. Malik initially denied driving to Marsh Street and that Seniakevgch left his vehicle. Seniakevgch also maintained he never left the vehicle. After further questioning, Malik admitted driving Seniakevgch to meet a friend. Malik was found in possession of heroin after a consent search.

Officers Wilder and Higgins, who were assisting with surveillance in an unmarked police vehicle, followed the RAV4 and "conducted a motor vehicle stop after the RAV4 was found [to] be unregistered, in violation of N.J.S.A. 39:3-4." As Wilder and Higgins approached the RAV4, they observed the passenger, later identified as co-defendant James Ward, making "furtive movements toward his legs and underneath his seat[,] as if he was attempting to conceal something." Higgins requested the driver, later identified as defendant, provide his credentials. After defendant advised his license was suspended and he could not produce documentation, he complied with Higgins's request to exit the vehicle. In response to questioning, defendant stated they were traveling to Carteret, where Ward lived, after going to a fast food restaurant, the mall, and defendant's girlfriend's house. Defendant denied anyone else had been in the vehicle.

Higgins thereafter approached Ward and requested his credentials. Ward, however, provided the false name and a fake birth date advising he did not have

credentials. Higgins later noticed Ward's driver's license was in plain view beneath the passenger seat. Ward originally told Wilder they had only gone to the mall for food and visited defendant's girlfriend, but later admitted they had also picked up and dropped off defendant's friend (Seniakevgch). Defendant advised he and Ward had warrants for their arrest, which was confirmed by an "ATS/ACS/NCIC" search. After their arrest, the RAV4 was impounded.

On April 13, 2021, Dougherty submitted a search warrant application and affidavit for the RAV4. Dougherty stated he believed probable cause existed to search the RAV4 for evidence of CDS-related offenses based on his training, experience, and knowledge regarding the events surrounding the motor vehicle stops. In the affidavit, Dougherty explained defendant's and Ward's extensive criminal histories. The affidavit provided that New Jersey State Trooper David Wilkinson's K-9 Tino conducted an exterior sniff of the impounded RAV4, which yielded a positive CDS odor indication.

On April 13, 2021, a Criminal Part judge issued a search warrant for the RAV4. The search uncovered: sixteen bags of cocaine; seventeen Xanax bars; multiple plastic baggies; a loaded, defaced, black and tan colored handgun; and nine round pills suspected to be Oxycodone Hydrocholoride.

4

A Middlesex County grand jury indicted defendant on charges of: third-degree conspiracy to distribute CDS, N.J.S.A. 2C:5-2 & N.J.S.A. 2C:35-5(b)(3); three counts of third-degree possession with intent to distribute CDS, N.J.S.A. 2C:35-5(a)(1) & N.J.S.A. 2C:35-5(b)(3); three counts of third-degree possession of CDS, N.J.S.A. 2C:35-10(a)(1); second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b)(1); second-degree possession of a firearm while possessing CDS with the intent to distribute, N.J.S.A. 2C:39-4.1(a); fourth-degree possession of a large capacity ammunition magazine, N.J.S.A. 2C:39-3(j); and fourth-degree possession of a defaced firearm, N.J.S.A. 2C:39-3(d). Simultaneously, defendant was separately indicted for second-degree certain persons not to possess a weapon, N.J.S.A. 2C:39-7(b)(1).

On August 27, 2021, Ward filed a motion to suppress evidence seized from the RAV4, which defendant joined. Defendants argued the motor vehicle stop of the RAV4 "was impermissible because police lacked [a] reasonable and articulable suspicion of criminal activ[it]y." Defendants further argued the "subsequent search of the [RAV4] was unlawful," and the evidence must be suppressed. The State opposed.

The motion judge denied the motion on the papers determining no material issues of fact existed. The judge found the officers conducted the RAV4 motor

vehicle stop "[a]s a result of an expired registration" and "based on the vehicle's violation of [N.J.S.A.] 39:3-4[,] Registration of automobiles." Further, the judge noted "Higgin[s]'s supplemental report" stated the RAV4 was stopped due to an expired registration, and Dougherty provided the search warrant judge with a detailed affidavit; thus, the judge found the affidavit established probable cause and execution of the warrant was proper.

On June 30, 2022, defendant pleaded guilty to possession with intent to distribute CDS and unlawful possession of a weapon. He was thereafter sentenced to a five-year term of imprisonment on the weapons offense, with forty-two months of parole ineligibility, to be served concurrently to a three-year sentence on the CDS offense, and a five-year sentence for violating drug court probation.

On appeal, defendant raises the following points:

POINT I

THE WARRANT AFFIDAVIT DID NOT PROVIDE PROBABLE CAUSE FOR THE SEARCH BECAUSE THE RELIABILITY OF THE CANINE WAS NOT ESTABLISHED. THUS, THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION TO SUPPRESS.

<u>POINT II</u>

ALTERNATIVELY, A REMAND IS REQUIRED FOR AN EVIDENTIARY HEARING REGARDING THE BASIS OF THE MOTOR VEHICLE STOP AND THE RELIABILITY OF THE CANINE.

II.

"The Fourth Amendment to the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution protect individuals' rights 'to be secure in their persons, houses, papers, and effects.'" <u>State v. Andrews</u>, 243 N.J. 447, 464 (2020). Search warrants must "be 'supported by oath or affirmation' and describe with particularity the places subject to search and people or things subject to seizure." <u>Ibid.</u> (quoting <u>U.S. Const.</u> amend. IV & <u>N.J. Const.</u> art. I, ¶ 7). A search executed pursuant to a warrant enjoys the presumption of validity. <u>See</u> <u>State v. Bivins</u>, 226 N.J. 1, 10-11 (2016). "Before issuing a warrant, the judge must be satisfied that there is probable cause to believe that a crime has been committed, or is being committed, at a specific location or that evidence of a crime is at the place sought to be searched." <u>State v. Sullivan</u>, 169 N.J. 204, 210 (2001).

"Probable cause for the issuance of a search warrant requires 'a fair probability that contraband or evidence of a crime will be found in a particular place.'" <u>State v. Chippero</u>, 201 N.J. 14, 28 (2009) (quoting <u>United States v.</u>

7

Jones, 994 F.2d 1051, 1056 (3d Cir. 1993)). "'[T]he probable cause determination must be . . . based on the information contained within the four corners of the supporting affidavit, as supplemented by sworn testimony before the issuing judge that is recorded contemporaneously.'" State v. Marshall, 199 N.J. 602, 611 (2009) (quoting Schneider v. Simonini, 163 N.J. 336, 363 (2000)).

"[S]ubstantial deference must be paid by a reviewing court to the determination of the judge who has made a finding of probable cause to issue a search warrant." State v. Evers, 175 N.J. 355, 381 (2003). Any "[d]oubt as to the validity of the warrant 'should ordinarily be resolved by sustaining the search.'" State v. Keyes, 184 N.J. 541, 554 (2005) (quoting State v. Jones, 179 N.J. 377, 389 (2004)). The same applies in situations where "the adequacy of the facts offered to show probable cause . . . appear[] to be marginal." State v. Kasabucki, 52 N.J. 110, 116 (1968) (citing United States v. Ventresca, 380 U.S. 102, 109 (1965)).

"To justify a stop, an 'officer must have a reasonable and articulable suspicion that the driver . . . is committing a motor-vehicle violation' or some other offense." State v. Carter, 247 N.J. 488, 524 (2021) (alteration in original) (quoting State v. Scriven, 226 N.J. 20, 33-34 (2016)). In determining whether a reasonable and articulable suspicion exists, the judge must consider "the totality

of the circumstances—the whole picture." State v. Gamble, 218 N.J. 412, 431 (2014) (quoting United States v. Cortez, 449 US. 411, 417 (1981)). Further, "[t]he State need not prove that the suspected motor vehicle violation has in fact occurred." State v. Barrow, 408 N.J. Super. 509, 518 (App. Div. 2009) (citing State v. Locurto, 157 N.J. 463, 470 (1999)). Rather, "[c]onstitutional precedent requires only reasonableness on the part of the police, not legal perfection. Therefore, the State need prove only that the police lawfully stopped the car, not that it could convict the driver of the motor-vehicle offense." State v. Williamson, 138 N.J. 302, 304 (1994).

Our review of the trial court's ruling on a motion to suppress evidence is limited. We "must defer to the factual findings of the trial court on a motion to suppress so long as its findings are supported by sufficient credible evidence in the record." State v. Erazo, 254 N.J. 277, 297 (2023). "The governing principle, then, is that '[a] trial court's findings should be disturbed only if they are so clearly mistaken that the interests of justice demand intervention and correction.'" State v. Nelson, 237 N.J. 540, 551-52 (2019) (alteration in original) (quoting State v. Robinson, 200 N.J. 1, 15 (2009)). By contrast, we review de novo "a trial court's interpretation of the law" and the legal "consequences that flow from established facts." Gamble, 218 N.J. at 425.

### III.

Defendant, for the first time on appeal, argues Dougherty's search warrant affidavit was insufficient to establish probable cause because he did not detail the canine's qualifications and reliability. Defendants' suppression motion had sought to suppress "all evidence seized as a result of the search of the [RAV4]," but did not specifically challenge the canine information provided. We generally decline to consider issues not presented to the trial court when an opportunity for such a presentation is available unless the questions raised on appeal concern jurisdiction or matters of great public interest. Robinson, 200 N.J. at 20 (quoting Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973)). Nevertheless, as the State does not oppose the late assertion of the argument, we briefly address defendant's argument for completeness.

It is undisputed the affidavit provided no information regarding the reliability of K-9 Tino and that the canine sniff was conducted only after the RAV4 was properly impounded. Relying on Florida v. Harris, 568 U.S. 237 (2013), defendant argues the affidavit failed to establish probable cause because "a positive alert by a narcotics dog may establish probable cause only if the State proves that the dog is sufficiently reliable." We recognize that in Florida, the United States Supreme Court specifically addressed whether a K-9 officer had

A-1765-22

probable cause for a warrantless search of an automobile after a drug-detecting canine alerted of the smell of CDS. Id. at 240. The United States Supreme Court stated, "A [canine] sniff is up to snuff when," "through the lens of common sense," the totality of circumstances factually supports that a reasonably prudent person would believe the vehicle subject to search "would reveal contraband or evidence of a crime." Id. at 248. Further, our Supreme Court has recognized, "[c]anine sniffs do not involve the unveiling of noncontraband items that would otherwise remain unexposed to public view and signal only the presence or absence of illegal items." State v. Dunbar, 229 N.J. 521, 539 (2017).

Here, the totality of the additional facts provided by the affiant sufficiently supported probable cause for the search warrant. In the affidavit, Dougherty specifically attested that, based on his "training and experience in the field of narcotics investigations," he "believed that a drug transaction [had] occurred between Seniakevgch and the occupant(s) of the RAV[4]." The basis to believe a drug transaction occurred included that during surveillance: Malik had parked the Mercedes on Marsh Street; Seniakevgch had exited the vehicle entering a multi-family complex parking area; and approximately five minutes later, the RAV4 exited the parking area and stopped alongside the Mercedes, permitting Seniakevgch to exit and reenter the Mercedes. Dougherty elaborated that he

believed a drug transaction occurred because "[i]t is [commonplace] for drug-users and drug-distributors to conduct their drug transactions very quickly, and often inside of motor vehicles." He further provided that after the Mercedes was stopped for failing to maintain its lane, Milak and Seniakevgch separately gave conflicting stories, and Milak was found in possession of heroin.

Dougherty attested the RAV4 was separately stopped for being unregistered in violation of N.J.S.A. 39:3-4. Defendant and Ward also gave conflicting stories and denied that an additional male (Seniakevgch) was in the RAV4, despite officers' observations. Ward had provided a false name and had a warrant for his arrest. The affidavit recited defendant was arrested as his "driver's license was suspended and he had an active . . . warrant." Dougherty also included defendant's criminal history.

We recognize our scope of review of a search warrant is limited. Chippero, 201 N.J. at 32. As found by the judge, probable cause was established because "the affidavit[] explained that based on the officers' training and experience and knowledge . . . , [Dougherty] believed a CDS transaction had occurred." Further, the judge's finding that "probable cause was established" based on the affidavit's provided surrounding circumstances is sufficiently supported. Thus, we discern no reason to disturb the judge's decision.

We also reject defendant's argument that the judge erroneously denied the suppression motion without holding an evidentiary hearing. We recognize and reiterate that, at a minimum, oral argument should be afforded for parties to advance their positions, and an evidentiary hearing is required "when the defendant[] . . . places material facts in dispute." State v. Green, 346 N.J. Super. 87, 90-91 (App. Div. 2001); see also R. 3:5-7(c) (stating that "[i]f material facts are disputed, testimony thereon shall be taken in open court"). Notwithstanding those well-established principles, we conclude this case falls within the very narrow exception permitting a determination on the papers because only mere conclusions regarding the validity of the stop and warrant affidavit were posited. "To establish a dispute as to material facts, 'a defendant must do more than allege baldly that the search warrant was unlawful.'" State v. Jones, 475 N.J. Super. 520, 528 (App. Div. 2023) (quoting State v. Carrillo, 469 N.J. Super. 318, 332 (App. Div. 2021)). "'[F]actual allegations which are general and conclusory or based on suspicion and conjecture [do] not suffice' to establish a dispute of material facts warranting a testimonial hearing." Ibid. (alteration in original) (quoting State v. Hewins, 166 N.J. Super. 210, 215 (Law Div. 1979)).

Defendant's contention that a hearing was required as a material dispute of fact existed regarding the officers' reasonable articulable suspicion for the

13                                                                    A-1765-22

stop is unsupported. The suppression argument before the judge, which defendant joined, was specifically that "there was no reasonable and articulable suspicion justifying the stop of the" RAV4 because the officers' observations on Marsh Street were insufficient, and the police "report ma[d]e no mention of any motor vehicle offense committed by the driver." Defendant argued, "[n]one of the officers involved mention[ed] a motor vehicle infraction that could justify the stop." He posited "[i]n the case at hand, the officer's decision . . . was based on nothing more than the officer's subjective hunch that he was involved in a CDS transaction."

Presented with defendants' statement of facts and argument, the judge considered Higgins's supplemental police report. The report stated that after "continu[ing] to follow the RAV4 . . . the registration . . . was found to have expired." See N.J.R.E. 101(a)(3)(D) (permitting the court to relax the rules of evidence in "proceedings to establish probable cause"); see also State v. Torres, 253 N.J. 485, 492 n.5 (2023) ("Trial courts are permitted to rely on such hearsay reports at pretrial suppression hearings to determine the admissibility of proofs."). Further, the affidavit stated, "Wilder followed the RAV4 . . . and conducted a motor vehicle stop after the RAV4 was found be unregistered."

The judge found it was undisputed the officers "observed that the Toyota's registration had expired and had probable cause to believe that a traffic violation occurred and thus were permitted to conduct a motor vehicle stop." He also noted from the record, "[a] traffic summons for [an] unregistered vehicle was issued to" defendant. Defendant did not refute the registration was expired. Again, we recognize establishing a material dispute of fact sufficient to warrant a hearing on a motion to suppress is not a high threshold. Nonetheless, defendant must aver at least a minimum showing; that threshold was not met here.

For these reasons, we discern no error in the judge's denial of the suppression motion regarding the stop and affidavit without a hearing.

To the extent we have not addressed any of defendant's arguments, it is because they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

15                                                                    A-1765-22